11-7427

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
————————————————

WILLIAM SCOTT MACDONALD,
Petitioner-Appellant

v.

TIM MOOSE,
Respondent-Appellee

and

KEITH HOLDER,
Respondent
————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,
ALEXANDRIA DIVISION
————————————————

BRIEF OF THE APPELLEE
————————————————

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Robert H. Anderson, III
Senior Assistant Attorney General

Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-9548

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES ........................................................1

STATEMENT OF THE CASE ...................................................1

STATEMENT OF FACTS .........................................................4

SUMMARY OF ARGUMENT ...................................................8

ARGUMENT .......................................................................... 11

  I.  Standards of Review ..................................................11

  II. Discussion of Issues................................................. 12

  A.    THE STATE COURTS' REJECTION OF PETITIONER'S FACIAL AND AS APPLIED CONSTITUTIONAL CHALLENGES TO VA. CODE § 18.2-361(A) WERE NOT UNREASONABLE WITHIN THE MEANING OF § 2254(d) AND TEAGUE. ........................12

  B.  THE SUPREME COURT OF VIRGINIA CORRECTLY DISMISSED PETITIONER'S EX POST FACTO CLAIM IN HIS STATE HABEAS CORPUS PETITION AS PROCEDURALLY DEFAULTED UNDER THE RULE IN PARRIGAN. ............................ 46

  C.  THE DISTRICT COURT CORRECTLY DISMISSED AS PROCEDURALLY BARRED PETITIONER'S EQUAL PROTECTION CLAIM. .................................................... 54

  D.  PETITIONER HAS PROCEDURALLY DEFAULTED ON HIS CLAIM THAT THE STATE APPELLATE COURTS' RULINGS VIOLATED THE SUBSTANTIVE AND DUE PROCESS AND EQUAL PROTECTION RIGHTS OF MINORS. .................................... 57

CONCLUSION ....................................................................... 58

Certificate Of Compliance With Rule 32(a).............................. 59

Certificate Of Service ............................................................. 60

i

## TABLE OF AUTHORITIES

<u>Page</u>

### Cases

*Allstate Insurance Co. v. Serio*,
   261 F.3d 143 (2d Cir. 2001) ..................................................... 43

*Anderson v. Morrow*, 371 F.3d 1027
   (9th Cir. 2004) ........................................................................ 34

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ...................................... 12

*Bassette v. Thompson*, 915 F.2d 932
   (4th Cir. 1990) ........................................................................ 54

*Beck v. Alabama*, 437 U.S. 625 (1980) .......................................... 24

*Bobby v. Dixon*, 132 S.Ct. 26
   (2011) (*per curiam*) ............................................................... 24

*Bobby v. Mitts*, 131 S.Ct. 1762 (2011)
   (*per curiam*) .......................................................................... 24

*Bowers v. Hardwick*, 478 U.S. 186 (1986) ................................ 26, 27, 29, 35

*Breard v. Greene*, 523 U.S. 371 (1998)
   (*per curiam*) .......................................................................... 15

*Bruton v. United States*, 391 U.S. 123 (1968) .............................. 18

*Carroll v. Commonwealth*, 701 S.E.2d 414 (Va. 2010) ............... 49

*Casey v. Musladin*, 549 U.S. 70 (2006) ........................................ 36

*Cavazos v. Smith*, 132 S.Ct. 2 (2011) (*per curiam*) ..................... 19

*Chapman v. United States*, 500 U.S. 453 (1991) .......................... 38

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ............ 45

*Clements v. Fashing*, 457 U.S. 1957 (1982) .................................. 37

*Coleman v. Johnson*, 132 S.Ct. 2060
   (2012) ..................................................................................... 23

*County Court of Ulster County v. Allen*,
   442 U.S. 140 (1979) ...................................................... 9, 13, 37

*Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) ................................. 40

*Estelle v. McGuire*, 502 U.S. 62 (1991) ...................................... 39

*Felkner v. Jackson*, 131 S.Ct. 1305 (2011) .................................. 20

*Friedline v. Commonwealth*, 576 S.E.2d 491
  (Va. 2003) ........................................................................ 51

*Grafmuller v. Commonwealth*, 698 S.E.2d 276
  (Va. App. 2010) ................................................................ 30

*Gray v. Maryland*, 523 U.S. 185 (1998) .......................... 18, 19, 40

*Gray v. Netherland*, 518 U.S. 152 (1996) .................................. 52

*Gray v. Netherland*, 99 F.3d 158
  (4th Cir. 1996) ................................................................. 52

*Gray v. Netherland*, 99 F.3d at 165 ........................................ 57

*Greene v. Fisher*, 132 S.Ct. 38 (2011) ..................................... 18

*Guerra v. Lombardi*, 336 S.W.3d 167
  (Mo. App. 2011) ............................................................... 33

*Hamilton Development Co. v. Broad Rock Club*,
  445 S.E.2d 140 (Va. 1994) .................................................. 48

*Hardy v. Cross*, 132 S.Ct. 490 (2011) (*per curiam*) .................... 23

*Harrington v. Richter*, 131 S.Ct. 770 (2010) .............................. 15

*Horn v. Banks*, 536 U.S. 266 (2002) ........................................ 15

*Howes v. Fields*, 132 S.Ct. 1181 (2012) ................................... 21

*Huffman v. Commonwealth*, 284 S.E.2d 837
  (Va. 1981) ........................................................................ 30

*In Re:  Search of the Premises of Carl Ray Wilson*,
  153 F.Supp.2d 1020 (E.D.Ark. 2001) ..................................... 39

*INS v. St. Cyr*, 533 U.S. 289 (2001) ........................................ 43

*Jackson v. Thornburgh*, 907 F.2d 194
  (D.C. Cir. 1990) ................................................................ 39

*Lawrence v. Texas*, 539 U.S. 558 (2003) ............................. passim

*Lowe v. Swanson*, 663 F.3d 258
  (6th Cir. 2011) .................................................................. 34

*MacDonald v. Commonwealth*, 630 S.E.2d 754 (Va. App. 2006) ........ passim

*MacDonald v. Commonwealth*, 645 S.E.2d 918 (Va. 2007) ........................ 13

*MacDonald v. Johnson*, 2009 U.S. Dist. LEXIS 94563
    Civil Action No. 1:08cv781 ....................................................... 42

*MacDonald v. Johnson*, No. 09-7973
    (June 24, 2010) ........................................................................ 44

*Mauk v. Goodrich*, 2009 U.S. Dist. LEXIS
    82674 (S.D.Ga. Sept. 10, 2009) ............................................... 35

*Members of City Council v. Taxpayers
    for Vincent*, 466 U.S. 789 (1984) ........................................... 38

*Meyer v. Branker*, 506 F.3d 358
    (4th Cir. 2007) ......................................................................... 11

*Mills v. Maryland*, 486 U.S. 367 (1988) ....................................... 24

*Miranda v. Arizona*, 384 U.S. 436 (1966) ...................... 21, 22, 24

*Musser v. Mapes*, 2012 U.S. Dist. LEXIS
    50535 (S.D. Ia. April 11, 2012) ............................................... 34

*New York v. Ferber*, 458 U.S. 747 (1982) .................................... 38

*Ohree v. Commonwealth*, 494 S.E.2d 484
    (Va. App. 1998) ....................................................................... 56

*Ortiz v. Commonwealth*, 667 S.E.2d 751 (Va. 2008) ................... 50

*Parker v. Matthews*, 183 L.E.2d 32 (2012) ................................. 23

*Pethtel v. Ballard*, 617 F.3d 299
    (4th Cir. 2010) ......................................................................... 51

*Premo v. Moore*, 131 S.Ct. 733 (2011) ........................................ 24

*Schlup v. Delo*, 513 U.S. 298 (1995) ............................................ 12

*Singson v. Commonwealth*, 621 S.E.2d 682
    (Va. App. 2005) ....................................................................... 14

*Sinistaj v. Burt*, 66 F.3d 804
    (6th Cir. 1995) ......................................................................... 31

*Sintay v. Martel*, 769 F.Supp.2d 1197
    (C.D. Cal. 2010) ...................................................................... 32

*Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974) ........................ 11

*Smith v. Spisak*, 130 S.Ct. 676 (2010) ........................................ 24

*Stanford v. Parker*, 266 F.3d 442
(6th Cir. 2001) ................................................................. 31

*State v. Oakley*, 605 S.E.2d 215
(N.C. App. 2004) .............................................................. 32

*State v. Senters*, 699 N.W.2d 810
(Neb. 2005) ............................................................... 33, 41

*State v. Thomas*, 891 So.2d 1233 (La. 2005) .............................. 35

*State v. Van*, 688 N.W.2d 600 (Neb. 2004) .................................. 35

*State v. Whiteley*, 616 S.E.2d 576
(N.C.App. 2005) ............................................................... 33

*Swarthout v. Cooke*, 131 S.Ct. 859 (2011) .................................. 39

*Teague v. Lane*, 489 U.S. 288 (1989) .................................... passim

*Tjan v. Commonwealth*, 621 S.E.2d 659
(Va. App. 2005) ............................................................... 14

*United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999) ............................ 44

*United States v. Bach*, 400 F.3d 622
(8th Cir. 2005) ........................................................... 33, 41

*United States v. Friday*, 525 F.3d 938
(10th Cir. 2008) ............................................................. 39

*United States v. Lentz*, 524 F.3d 501 (4th Cir. 2008) ................................ 45

*United States v. Peterson*, 294 F.Supp.2d 797
(D.S.C. 2003), *aff'd*, 145 Fed. Appx. 820
(4th Cir. 2005) .............................................................. 33

*United States v. Salerno*, 481 U.S. 739 (1987) .............................. 38

*United States v. Stevens*, 130 S.Ct. 1577
(2002) ................................................................... 31, 36

*United States v. Wicks*, 132 F.3d 383 (7th Cir. 1997) ................................ 39

*United States v. Williams*, 553 U.S. 285 (2008) ............................. 38

*Virginia v. American Booksellers Assoc.*, 484 U.S. 383 (1988)................... 39

*Weinberger v. Tucker*, 510 F.3d 486 (4th Cir. 2007) ................................ 44

*Wetzel v. Lambert*, 132 S.Ct. 1195 (2012)
(*per curiam*)............................................................... 22

v

*Williams v. Morgan*, 478 F.3d 1316
   (11th Cir. 2007) ........................................................................ 34

*Williams v. Taylor*, 529 U.S. 362
   (2000) ............................................................................... 15, 42

*Wright v. Van Patten*, 552 U.S. 120 (2008) ................................ 36

*Yeatts v. Murray*, 455 S.E.2d 18 (Va. 1995) ............................... 51

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991) ................................. 14

## Other Authorities

28 U.S.C. § 2254(d) ............................................................... passim

Rule 5:17(c ................................................................................. 50

Rule 5A:12(c)(1) of the Rules
   of the Supreme Court of Virginia ........................................... 48

Section 8.01-654(B)(2), Code of Virginia ........................... 54, 56

Section 18.2-29, Code of Virginia ............................................. 29

Section 18.2-361(A), Code of Virginia ................................. passim

Section 18.2-361, Code of Virginia ............................................ 42

Section 18.2-371, Code of Virginia ............................................ 40

## STATEMENT OF ISSUES

On April 17, 2012, this Court granted a certificate of appealability limited to the following issues:

> Whether Va. Code § 18.2-361(A) is unconstitutional either facially or as applied in MacDonald's case, and more specifically whether the Commonwealth's construction of the statute to convict MacDonald of sodomy violated the Ex Post Facto Clause, or was otherwise constitutionally impermissible, in light of the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). The parties should also address whether the Commonwealth ruled MacDonald's claims procedurally defaulted on direct appeal and collateral review, and if so, whether those rulings were adequately premised on the record.

## STATEMENT OF THE CASE

On May 12, 2005, upon his guilty plea, petitioner was convicted in the Juvenile and Domestic Relations District Court of the City of Colonial Heights of filing a false police report. MacDonald was sentenced to a term of 12 months in jail, with six months suspended. Thereafter, upon his not guilty plea, MacDonald was convicted in the Circuit Court of the City of Colonial Heights on August 2, 2005 of solicitation to commit a felony and contributing to the delinquency of a minor. MacDonald was sentenced to respective terms in prison of ten years, with nine years suspended, and 12 months. (App. 124-125).

Petitioner appealed his circuit court convictions to the Court of Appeals of Virginia, which awarded an appeal and thereafter issued an opinion affirming

MacDonald's convictions on January 9, 2007.  (App. 152-156).  Then, the Supreme Court of Virginia refused MacDonald's second-tier petition for appeal on September 7, 2007 and his petition for rehearing on November 9, 2007.  (App. 183, 208).

Next, MacDonald filed a habeas corpus petition in the Supreme Court of Virginia on February 4, 2008.  (App. 209-245).  After respondent filed a motion to dismiss and a supplemental motion to dismiss, the state court entered an order on October 21, 2008, in which it dismissed the petition.  (App. 247-251, 255-266, 267-271).

On September 16, 2009, MacDonald filed a federal habeas corpus petition in the district court.  (App. 272-321).  On November 30, 2009, the district court entered an order directing that the petition be conditionally filed but also, in part, affording petitioner the opportunity to show cause why his Claim 1 raising an ex post facto argument should not be dismissed as procedurally defaulted, based on the default ruling of the Supreme Court of Virginia on state habeas corpus.  (App. 322-325).  MacDonald filed a response on December 30, 2009.  (App. 326-331).  The district court issued a show cause order on March 25, 2010, but again stated that it appeared

MacDonald's Claim 1 was barred due to procedural default.[1] (Supp. App. 27). Respondent filed a Rule 5 answer and motion to dismiss as well as a supporting brief, and on February 14, 2011, the district court denied the motion to dismiss without prejudice. (App. 334-345, 355-359).

In its order, the district court concluded that after reviewing the state court records, it appeared that MacDonald's ex post facto claim "was not procedurally defaulted, but instead was properly raised in the trial court and on direct appeal." (App. 357). The court explained that MacDonald's pleadings made it "clear that this *pro* se petitioner intended to challenge the constitutionality of § 18.2-361, both facially and as applied in this case," and that "he mis-characterizes [it] as an Ex Post Facto Clause Claim." (*Id.*). The district court further stated that respondent could file another motion to dismiss that addressed petitioner's challenge to the constitutionality of § 18.2-361(A), both facially and as applied here. (App. 358). Accordingly, on March 25, 2011, respondent filed a supplemental brief in support of the Rule 5 answer and motion to dismiss. (App. 360-378). On April 6, 2011, MacDonald filed a response to that pleading. (App. 379-399).

---

[1] The show cause order specifically noted, though, that respondent was not precluded from addressing this issue in any response. (Supp. App. 27 n. 1).

3

On September 26, 2011, the district court issued an order and memorandum opinion denying MacDonald's petition.  (App. 400-413).  The district court held that the state court's rejection of his facial and as applied constitutional challenges to § 18.2-361(A) and his claim that the evidence was insufficient on the delinquency of a minor count were not unreasonable under 28 U.S.C. § 2254(d).  (App. 406-408, 410-412).  As elaborated on below, the district court held procedurally defaulted petitioner's ex post facto and equal protection claims.  (App. 404-406, 408-410).  On October 24, 2011, MacDonald timely filed a notice of appeal.  (App. 414).

STATEMENT OF FACTS

Petitioner was prosecuted and convicted under Virginia Code § 18.2-29, **not** § 18.2-361, Virginia's sodomy statute.  (App. 29).  Section 18.2-29 states, in relevant part:  "Any person who commands, entreats, or otherwise attempts to persuade another person to commit a felony other than murder, shall be guilty of a Class 6 felony.  Any person age eighteen or older who commands, entreats, or otherwise attempts to persuade another person under age eighteen to commit a felony other than murder, shall be guilty of a Class 5 felony."  Petitioner was indicted for the aggravated offense set forth in the second sentence of the statute.

4

Amanda Johnson became acquainted with the petitioner because a friend of hers and MacDonald worked in the same fire department. (App. 48). MacDonald was born on January 1, 1957. (App. 1-2, 31). On September 23, 2004, Johnson was 17 years old. (App. 47).

That night, after missing a telephone call from MacDonald, Johnson paged him back at the fire department, and petitioner called to ask when she got off work. (App. 48). Later that evening, Johnson called MacDonald, and the two agreed to meet at Burcham Cycles in Colonial Heights. (App. 49). Johnson arrived at 9:30 p.m., but petitioner was not there. Consequently, Johnson called MacDonald, and he told her to meet him at a Home Depot store in Colonial Heights. (App. 49-50).

There, MacDonald got in the backseat of Johnson's vehicle, and she drove it to a gas station to get gas. (App. 50). Johnson then told MacDonald that she "had to go further up the street to get a book out of another car for school." (App. 51). Johnson told MacDonald that he could ride with her, and she drove up to her grandmother's house in Colonial Heights, where she "ran in real quick and I told him to sit still. So I just went in and got my book and got back in the car." (App. 51, 83).

At trial, Johnson described what happened upon her return to the car parked outside the house:

> Mr. MacDonald leaned forward in my front seat and asked me to suck his dick. I told him, no, that I was tired and wanted to go home. He then pointed to a shed also in the yard and said you can pull your car in there and we could go back there and have sex. I was, like, no, I'm tired, I'm just going to take you back to your truck now.

(App. 51).

Johnson then drove MacDonald back to the Home Depot. There, petitioner pushed Johnson against the hood of her vehicle, and started kissing and "groping all over" her. (App. 51). At one point, MacDonald felt underneath Johnson's shirt. (App. 52). Finally, Johnson got in her car and drove away. MacDonald followed her "until he got to the subdivision and turned in there." (App. 52).

At trial, Johnson testified that she had not consented to any of the defendant's actions. (App. 52). The victim further testified that the shed outside her grandmother's home was "observable from the road. There's a fence that goes beside it so anything behind that fence is observable from the road." (App. 54).

Colonial Heights Police Detective Early took a statement from MacDonald at the police department on December 8, 2004, several days after petitioner had filed a police report that he had been "abducted and sexually accosted" by Johnson. (App. 57-58). In his statement to Early, petitioner claimed that the "very upset" Johnson

6

had called him, and he agreed to meet her at the Home Depot parking lot in Colonial Heights. (App. 59). MacDonald's statement also asserted that he got into her vehicle, she drove off and went to her grandmother's house in Colonial Heights. At that point, the prosecutrix "forcibly removed his penis from his pants and performed oral sex against his will." (App. 59). MacDonald claimed that after this incident, he told Johnson: "This is wrong, I'm married, lose my number and don't call me any more." (App. 59-60).

During his trial testimony Detective Early stated that he had been present in the juvenile and domestic relations court on May 12, 2005, when MacDonald pled guilty to filing a false police report. (App. 62). Detective Early also testified that he had examined the grounds where the sexual encounter had occurred and that someone in the shed would not have been in public "if the door was shut." (App. 63-64). The detective also stated that there was a fence along the property that was "about three foot tall, chain link fence." (App. 64).

Testifying in his own behalf at trial, MacDonald asserted that he had met Johnson at the Home Depot store at her request. (App. 79-80). Petitioner further claimed that after he had gotten into Johnson's vehicle and told her that "[w]hat happened in Prince George should not have happened," she had become angry and

7

had driven away, finally stopping outside her grandmother's home.  (App. 81-83).

Next, according to MacDonald, Johnson "grabbed the front of my jeans, unzipped,

she pulled my pecker out and she said, I want to suck you right now.  I said please

stop."  (App. 83).  The defendant also testified that once Johnson had "started," a

man came out of the home, turned on a porch light, and yelled "who's out there."

(App. 83-84).  At that point, Johnson "got mad," and drove the two back to the Home

Depot store.  (App. 84).  MacDonald claimed that when he drove away to his home,

Johnson followed him most of the way.  (App. 84).

<u>SUMMARY OF ARGUMENT</u>

     Petitioner was convicted of the solicitation, by someone 18 or older, of another

person under the age of 18.  MacDonald was not convicted of sodomy of a minor.

Consequently, matters that are critically important in assessing the constitutionality

of a sodomy conviction — such as whether the act occurred in public or private and

whether it was consensual — do not determine the constitutionality of a solicitation

conviction.  The cases relied upon by petitioner on brief do not establish the

unconstitutionality of solicitation statutes generally in the wake of *Lawrence v.*

*Texas*, 539 U.S. 558 (2003), or MacDonald's solicitation conviction in particular.

8

To the extent that the constitutionality of Virginia's sodomy statute may bear upon MacDonald's constitutional challenge to his solicitation conviction, numerous federal and state courts have recognized the limited scope of the holding in *Lawrence*. These courts have held, in a variety of settings, that *Lawrence* upheld the liberty interest under the due process clause of consenting adults to engage in private acts of sodomy. While *Lawrence* disallows state interference with such a personal relationship, otherwise it does not call into question statutes such as Virginia Code § 18.2-361(A), Virginia's sodomy statute.

In particular, post-*Lawrence* cases have repeatedly recognized that *Lawrence* does not apply to, or vitiate, laws criminalizing sodomy that: (1) involves a minor; (2) is not consensual; or (3) occurs in public. In the present case, the state appellate courts recognized the limited scope of the holding in *Lawrence* and reasonably rejected MacDonald's due process challenge to the state sodomy statute as applied to him. Further, the state courts appropriately relied upon *County Court of Ulster County v. Allen*, 442 U.S. 140 (1979), to reject MacDonald's facial constitutionality challenge, on the ground that he lacked standing.

The state appellate courts' rulings in this case were entirely in keeping with controlling United States Supreme Court precedent. And, even if there was doubt on

9

this point, MacDonald has offered virtually no argument, much less made any showing, that the state courts' rulings were so transparently and unreasonably wrong as to authorize relief under 28 U.S.C. § 2254(d) or the "new rule" doctrine in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny. This is all the more true, considering that MacDonald was convicted of solicitation, not any sexual activity. Among other things, the completed crime occurred in public, and by everyone's description was not consensual. Thus, MacDonald was properly liable under § 18.2-361(A).

The numerous courts recognizing, and giving the effect to, the limited holding of the Supreme Court in *Lawrence* belies petitioner's argument that the state courts here engaged in some impermissible legislative rewriting of § 18.2-361(A). Indeed, in a separate appeal involving sodomy convictions in Prince George County, this Court has already rejected substantially identical arguments by MacDonald. Whether this prior ruling is characterized as the law of the case or collateral estoppel, there is no reason for this Court to reach a contrary result in the present appeal.

Petitioner did not raise any equal protection claim throughout the state proceedings, so that the district court correctly held this claim procedurally barred. Likewise, MacDonald did not properly advance any ex post facto claim at trial or on direct appeal, and the state appellate courts did not adjudicate any such claim in

disposing of his direct appeals. Therefore, the Supreme Court of Virginia correctly dismissed this claim on state habeas corpus as procedurally defaulted under *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), and the district court likewise properly enforced the state court's procedural default ruling. Finally, MacDonald never argued in the original proceedings that the application of the state sodomy statute to him would result in various constitutional deprivations by minors as a group, and he likewise raised no such claim as a basis for state or federal habeas corpus relief. Thus, his argument in this Court comes too late and raises no question regarding the correctness of the state appellate courts' rulings.[2]

## ARGUMENT

### I.    Standards of Review

This Court reviews the decision of a district court to deny habeas corpus relief de novo. *See Meyer v. Branker*, 506 F.3d 358, 364 (4th Cir. 2007). As to a claim adjudicated on the merits by the state courts, however, federal habeas corpus relief may be granted only under the standards established in 28 U.S.C. § 2254(d). Further, any federal constitutional claim is reviewable under the "new rule" doctrine in

---

[2] It is not clear whether MacDonald is challenging his conviction for contributing to the delinquency of a minor. If he is, petitioner plainly raises no arguments specific to that offense. Thus, any challenge to that conviction is baseless for the reasons advanced in this brief.

11

*Teague v. Lane*, 489 U.S. 288 (1989), and its progeny.  Finally, a claim dismissed by the state courts on the ground of procedural default is not reviewable on federal habeas corpus unless the petitioner can establish cause and prejudice or his actual innocence.  *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## II.  Discussion of Issues

A.    THE STATE COURTS' REJECTION OF PETITIONER'S FACIAL AND AS APPLIED CONSTITUTIONAL CHALLENGES TO VA. CODE § 18.2-361(A) WERE NOT UNREASONABLE WITHIN THE MEANING OF § 2254(d) AND *TEAGUE*.

At the outset, it cannot be emphasized too much that this is a federal habeas corpus appeal of a petition collaterally challenging presumptively valid state convictions.  *See Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).  Consequently, MacDonald may obtain federal habeas relief only if he can satisfy several demanding standards of review.  Yet, with very little qualification, MacDonald's brief reads like one filed in a direct appeal.  Indeed, he barely mentions § 2254(d), never refers to *Teague*, and presents virtually no argument that would distinguish this from a routine direct appeal brief.  Under these circumstances, MacDonald has hardly raised any questions about the correctness of the district court's various § 2254(d)-based rulings.

12

(App. 406-408, 410-412).

First, regarding MacDonald's facial challenge to the constitutionality of the state sodomy statute, on direct appeal the Court of Appeals (whose judgment thereafter was upheld by the Supreme Court of Virginia) ruled that MacDonald's due process challenge was not cognizable, because he lacked standing to assert that argument. (App. 153). The Court of Appeals relied upon its earlier decision in a separate appeal by MacDonald of sodomy convictions in the Circuit Court of Prince George County. (*Id.*). *MacDonald v. Commonwealth*, 630 S.E.2d 754 (Va. App. 2006).[3] In the Prince George appeal, the Court of Appeals relied upon *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-155 (1979), for the proposition that a party "'has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights.'" 630 S.E.2d at 756. Thereafter, the Supreme Court of Virginia affirmed the ruling of the Court of Appeals in the Prince George appeal. *MacDonald v. Commonwealth*, 645 S.E.2d 918 (Va. 2007). The Supreme Court, however, held that MacDonald had not properly advanced a claim of

---

[3] That opinion referred to petitioner as "McDonald," not "MacDonald." For the sake of simplicity, this brief will refer to petitioner as "MacDonald," irrespective of any different spelling in any court opinion.

13

facial invalidity in the trial court and thus held it procedurally barred. 645 S.E.2d at 919-921.

Obviously, the Supreme Court of Virginia's procedural default ruling in the separate Prince George appeal has no significance in the present matter. The Supreme Court of Virginia refused MacDonald's Colonial Heights appeal and the petition for rehearing in two unpublished opinions. (App. 183, 208). Thus, for purposes of § 2254(d), the opinion of the Court of Appeals of Virginia in the Prince George County case, which it incorporated by reference in adjudicating the Colonial Heights appeal, is the adjudication of the facial constitutionality claim that must be evaluated under § 2254(d).

The Court of Appeals also rejected MacDonald's "as applied" constitutional challenge, consistent with its prior holding in the Prince George appeal as well as *Singson v. Commonwealth*, 621 S.E.2d 682 (Va. App. 2005), and *Tjan v. Commonwealth*, 621 S.E.2d 659 (Va. App. 2005). (App. 153-154). Here as well, the Supreme Court of Virginia's disposition of MacDonald's second-tier appeal in unpublished orders means that the Court of Appeals's reasoning in the Prince George case is that which must be examined under § 2254(d) and *Teague*. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

14

As the district court correctly recognized, petitioner is entitled to federal habeas relief only if he can satisfy the onerous standard in 28 U.S.C. § 2254(d). (App. 402-403). This statute provides that any federal constitutional claim rejected on the merits by the state courts cannot warrant federal collateral relief, unless such state adjudication was legally or factually unreasonable within its meaning. *See also Williams v. Taylor*, 529 U.S. 362, 406-407, 411 (2000) (O'Connor, J. Opinion of the Court as to Part II). Further, petitioner must show that he is entitled to relief under the "new rule" doctrine in *Teague*, and its progeny. *See Horn v. Banks*, 536 U.S. 266 (2002) (federal habeas court must undertake *Teague* analysis as well as review under § 2254 (d)); *Breard v. Greene*, 523 U.S. 371 (1998) (*per curiam*) (claim in AEDPA case rejected as both procedurally defaulted and as without merit under *Teague*).

Time and again in the last two years, the United States Supreme Court has reversed (or on occasion affirmed) federal habeas rulings under the mandate in § 2254(d). For example, in *Harrington v. Richter*, 131 S.Ct. 770 (2010), the Supreme Court reversed the grant of federal habeas relief by the Ninth Circuit, whose decision, the Supreme Court concluded, reflected "judicial disregard for the sound and established principles that inform [the writ of habeas corpus's] proper issuance." 131 S.Ct. at 780. The Ninth Circuit had held that the California Supreme Court had

15

unreasonably rejected, within the meaning of § 2254(d)(1), the petitioner's ineffective counsel claim that trial counsel had been ineffective for not consulting with experts on blood evidence in determining and carrying out a trial strategy and in preparing to rebut expert evidence that the prosecution might, and in fact ultimately did, present.

The Supreme Court's discussion of the substantial limitations that § 2254(d) imposes on federal habeas courts in reviewing state court *Strickland* rulings simply underscores the heavy burden MacDonald bears in the case at bar:

> The pivotal question [in *Richter*] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Without the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States District Court.

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.

> \* \* \*

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state

16

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

\* \* \*

It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further….As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

\* \* \*

Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions….Section 2254(d)…complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding.

131 S.Ct. at 785-787 (alteration in original).

Apart from the *Strickland* rulings at issue in *Richter*, the Supreme Court has

17

repeatedly emphasized the onerous standard in § 2254(d) in a series of recent decisions involving a wide array of substantive issues. For example, in *Greene v. Fisher*, 132 S.Ct. 38 (2011), Greene sought to have his trial severed from that of the other charged co-conspirators. The trial court denied the motion to sever, but did require redaction of the confessions of several non-testifying co-defendants to eliminate proper names. On direct appeal, the Pennsylvania Superior Court rejected Greene's argument that his trial should have been severed under the rule in *Bruton v. United States*, 391 U.S. 123 (1968). Three months after the state appellate court's decision, the Supreme Court decided *Gray v. Maryland*, 523 U.S. 185 (1998), which raised substantial questions about the correctness of the prior state court decision. The Third Circuit Court of Appeals nevertheless rejected federal habeas corpus relief under § 2254(d) on Greene's *Bruton* claim on the ground that *Gray* was not part of the "clearly established Federal law" mentioned in § 2254(d)(1) at the time the Pennsylvania Superior Court decided the case. 132 S.Ct. at 43.

The Supreme Court affirmed the Third Circuit's ruling, and in so doing made clear the substantial limitations §2254(d) imposes upon federal habeas review of a state prisoner's habeas claim. Referring to § 2254(d)(1), the Supreme Court noted: "We have said that its standard of 'contrary to, or involv[ing] an unreasonable

18

application of, clearly established Federal law' is 'difficult to meet,' because the purpose of AEDPA is to insure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Id.* at 43, quoting *Richter*, 131 S.Ct. at 786 (alteration in original).

Notwithstanding its own intervening decision in *Gray*, the Supreme Court ruled that the decision of the Pennsylvania Superior Court passed muster under § 2254(d) under then-existing authority. *Id.* at 45. The Supreme Court noted that petitioner had "missed two opportunities to obtain relief under *Gray*" before he finally filed his federal habeas petition. *Id.* The Court noted that if Greene had filed a certiorari petition in that Court, it "would almost certainly have produced a remand in light of the intervening *Gray* decision." *Id.* But, with Greene having "forgone two obvious means of asserting his claim," the Supreme Court declined his request "to provide him relief by interpreting AEDPA in a manner contrary to both its text and our precedents." *Id.*

In *Cavazos v. Smith*, 132 S.Ct. 2 (2011) (*per curiam*), the Supreme Court in a single order granted certiorari and reversed the judgment of the Ninth Circuit Court of Appeals granting federal habeas corpus relief on a sufficiency claim. *Cavazos* was a murder case in which the parties had presented substantial conflicting expert

19

testimony at trial regarding the cause of death of the seven-week-old victim. The Supreme Court concluded the Ninth Circuit had wrongly "substituted its judgment for that of a California jury on the question whether the prosecution's or the defense's expert witnesses more persuasively explained the cause of a death." *Id.* at 4.

Similarly, in *Felkner v. Jackson*, 131 S.Ct. 1305 (2011), the trial court rejected a defendant's *Batson* claim that the prosecutor had exercised peremptory challenges to exclude certain black veniremen on the basis of their race. Thereafter on direct appeal the state appellate court upheld the trial court's ruling that the prosecution had offered valid race-neutral reasons for its strikes, not pretextual excuses.

When the case made its way to federal habeas corpus, the district court upheld the state appellate court's ruling as reasonable under § 2254(d) and thus denied federal habeas relief. The Ninth Circuit, however, reversed and granted federal habeas relief, stating in conclusory manner that the prosecutor's proffered explanations were insufficient "to counter the evidence of purposeful discrimination in light of the fact that two out of three prospective African-American jurors were stricken, and the record reflected different treatment of comparably situated jurors." 131 S.Ct. at 1307.

20

The Supreme Court reversed the Ninth Circuit's ruling, calling it "as inexplicable as it is unexplained." *Id.* The Supreme Court noted that a *Batson* claim hinges largely on credibility issues and on direct appeal that the trial court's determination is entitled to great deference and should be upheld unless clearly erroneous. *Id.* On federal habeas review of a state court judgment, the standard is even more demanding.

> On federal habeas review, AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt. Here the trial court credited the prosecutor's race-neutral explanations, and the [state appellate court] carefully reviewed the record at some length in upholding the trial court's findings. The state appellate court's decision was plainly not unreasonable. There was simply no basis for the Ninth Circuit to reach the opposite conclusion, particularly in such a dismissive manner.

*Id.* (citation and internal quotations omitted).

Other recent decisions of the Supreme Court likewise confirm the integral role that § 2254(d) plays in federal habeas review of claims previously adjudicated by the state courts. For example, in *Howes v. Fields*, 132 S.Ct. 1181 (2012), the Supreme Court reversed the Sixth Circuit's ruling that a prisoner is in custody within the meaning of *Miranda v. Arizona*, 384 U.S. 436 (1966), if he is taken aside and

21

questioned about events occurring outside the prison walls. The Supreme Court reversed under § 2254(d), on the ground that "our decisions do not clearly establish that a prisoner is always in custody for purposes of *Miranda* whenever a prisoner is isolated from the general prison population and questioned about conduct outside the prison." 132 S.Ct. at 1188-1189.

Likewise, in *Wetzel v. Lambert*, 132 S.Ct. 1195 (2012) (*per curiam*), the Supreme Court reversed the First Circuit's ruling, as violative of § 2254(d), that the prosecution had committed a *Brady* violation by not disclosing a "police activity sheet" that supposedly suggested someone other than, or in addition to, Lambert had been involved in the robbery in issue. The Supreme Court held that the Third Circuit wrongly overlooked the state courts' ruling that the notations on the police activity sheet were "'entirely ambiguous.'" 132 S.Ct. at 1198.

The Supreme Court concluded that the Third Circuit had wrongly focused on the state court's alternative holding that any impeachment value obtainable from the sheet would have been cumulative. "If the conclusion in the state courts about the content of the document was reasonable — not necessarily correct but reasonable — whatever those courts have to say about cumulative impeachment evidence would be beside the point." *Id.* Stating that the state courts' ruling that the document was

22

ambiguous "may well be reasonable," the Supreme Court remanded the case to the Third Circuit for a review of that ruling. *Id.* at 1199. *See also Parker v. Matthews*, 183 L.E.2d 32, 40 (2012) (Sixth Circuit wrongly granted relief under § 2254(d) on claims that evidence was insufficient to prove petitioner had not acted under influence of extreme emotional disturbance in death penalty case and that prosecutor's closing argument had violated due process; fact of conflicting evidence was enough to demonstrate reasonableness of state court's ruling on sufficiency claim, and even if prosecutor's "comment is understood as directing the jury's attention to inappropriate considerations," it would not establish unreasonableness of state court's ruling on second issue); *Coleman v. Johnson*, 132 S.Ct. 2060 (2012) (Third Circuit's grant of federal habeas relief on sufficiency claim in murder case contravened § 2254(d); circuit court "failed to afford due respect to the role of the jury and the state courts" and § 2254(d) "does not permit the type of fine-grained factual parsing in which the Court of Appeals engaged"); *Hardy v. Cross*, 132 S.Ct. 490 (2011) (*per curiam*) (Supreme Court reversed Seventh Circuit's ruling that state court had unreasonably held prosecution had made sufficient effort to secure presence of victim at retrial; "the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the

23

question of unavailability merely because the federal court identifies additional steps that might have been taken"); *Bobby v. Dixon*, 132 S.Ct. 26 (2011) (*per curiam*) (Supreme Court reversed under § 2254(d) Sixth Circuit's ruling that state courts had variously erred in upholding admission of confession against *Miranda* arguments; "it is not clear that the Ohio Supreme Court erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision"); *Bobby v. Mitts*, 131 S.Ct. 1762 (2011) (*per curiam*) (granting of federal habeas relief in death penalty case reversed under § 2254(d); state court did not unreasonably reject petitioner's argument on direct appeal that penalty phase instructions violated *Beck v. Alabama*, 437 U.S. 625 (1980)); *Premo v. Moore*, 131 S.Ct. 733 (2011) (state court's rejection of *Strickland* claim that counsel had been ineffective for not moving to suppress defendant's confession before advising him about plea agreement that he ultimately accepted was not unreasonable under "performance" or "prejudice" prongs of *Strickland* test); *Smith v. Spisak*, 130 S.Ct. 676 (2010) (Supreme Court reversed Sixth Circuit's grant of federal habeas relief in death penalty case as violative of § 2254(d); Ohio Supreme Court acted reasonably in holding that penalty phase instructions did not violate *Mills v. Maryland*, 486 U.S. 367 (1988), and that petitioner had not been prejudiced under *Strickland* by any inadequacy in defense counsel's closing

24

argument at penalty phase of trial).

Given the sheer breadth of these many holdings of the Supreme Court, petitioner's failure to offer any argument that the state appellate court's rulings were not merely incorrect, but unreasonably and transparently so, is all the more glaring. To compound the matter, MacDonald largely ignores the very different nature of the circumstances and offenses in this case from those in *Lawrence*. The concerns that actuated the Supreme Court's decision in *Lawrence* and that its opinion repeatedly alluded to were conspicuously absent in the present case. Thus, MacDonald's failure to demonstrate that the state courts' rulings in the present case were so far beyond the pale as to warrant relief under § 2254(d) and *Teague* is all the more evident.

In *Lawrence*, the adult defendant was convicted of consensual sodomy in his home with another adult under a state law that criminalized such sexual activity by two people of the same sex. The opening paragraph of *Lawrence* signaled the concerns that the Court's holding addressed, concerns that simply are not implicated in MacDonald's case. The Supreme Court stated: "Liberty protects the person from unwarranted government intrusions ***into a dwelling or other private places***. In our tradition the State is not omnipresent ***in the home***....The instant case involves ***liberty of the person*** both in its spatial and more transcendent dimensions." 539 U.S. at 516

25

(emphasis added).  One of the three questions upon which the Supreme Court granted certiorari reflected a similar focus:  "Whether Petitioner's criminal convictions for *adult consensual sexual intimacy in the home* violate their vital interests *in liberty and privacy* protected by the Due Process Clause of the Fourteenth Amendment?" *Id.* at 564.  The introductory portion of the Supreme Court's opinion was also careful to note:  "The petitioners were adults at the time of the alleged offense.  Their conduct was in private and consensual." *Id.*

The Supreme Court further stated in *Lawrence* that "the case should be resolved by determining whether the petitioners *were free as adults to engage in the private conduct in the exercise of their liberty* under the Due Process Clause of the Fourteenth Amendment of the Constitution." *Id.* (emphasis added).  In deciding this issue, the Supreme Court reconsidered, and overruled, its prior holding in *Bowers v. Hardwick*, 478 U.S. 186 (1986). *Id.* at 564-578.  In *Bowers*, the Court had reversed the holding of the Eleventh Circuit Court of Appeals that granted relief on Hardwick's federal lawsuit challenging the constitutionality of a Georgia statute to the extent it criminalized consensual sodomy.

In overruling *Bowers*, the Court in *Lawrence* stated that that prior decision had failed

26

> to appreciate the extent of the liberty at stake....The laws involved in *Bowers* and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act. Their penalties and purposes, though have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home. The statutes do seek to control a personal relationship that...is within the liberty of persons to chose without being punished as criminals....It suffices for us to acknowledge that adults may chose to enter upon this relationship in the confines of their homes and their own private lives and still retain their dignity as free persons....The liberty protected by the Constitution allows homosexual persons the right to make this choice.

*Id.* at 567.

*Lawrence* also criticized the assertion in *Bowers* that there had been a long-standing proscription against consensual sodomy. *Id.* at 567-568. To the contrary, the Supreme Court concluded in *Lawrence*:

> Laws prohibiting sodomy do not seem to have been enforced against consenting adults acting in private. A substantial number of sodomy prosecutions and convictions...were predatory acts against those ***who could not or did not consent, as in the case of a minor or the victim of an assault***. As to these, one purpose for the prohibitions was to ensure that there would be no lack of coverage if a predator committed a sexual assault that did not constitute rape as defined by the criminal law....Instead of targeting relations between consenting adults in private, 19th-century sodomy prosecutions typically involved relations between men and minor girls or minor boys, relations between adults involving force, relations between adults implicating disparity in status, or relations between men and animals.

*Id.* at 569 (emphasis added).

27

*Lawrence* further indicated that historically "a significant number [of sodomy prosecutions] involved conduct in a public place." *Id*. at 570. Likewise, the Supreme Court stated in *Lawrence* that the emerging trend, both in the United States and elsewhere, was the non-enforcement of consensual sodomy in private by adults or even the removal of criminal penalties for such acts. *Id.* at 571-577.

Consequently, *Lawrence* reversed the defendant's conviction, which was based upon consensual sodomy in his home with another adult. The Supreme Court's conclusion made clear the significant limitations upon its holding as well as the rationale underlying it:

> **The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution.** It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve **two adults who, with full and mutual consent from each other,** engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for **their private lives.** The State cannot demean their existence or control their destiny by making **their private sexual conduct** a crime**. Their right to liberty** under the Due Process Clause gives them **the full right to engage in their conduct** without intervention of the government....The Texas statute furthers no legitimate state interest which can justify its intrusion **into the personal and private life of the individual**.

*Id.* at 578 (emphasis in original).

28

In every material respect, the circumstances repeatedly emphasized in *Lawrence* were not present here. First and foremost, there was no "liberty interest" here to protect, under the Due Process Clause or any other constitutional provision. Instead, the 47-year-old MacDonald attempted to force himself upon the 17-year-old victim. Thus, there was no "personal relationship" here that two consenting adults had entered into. *Lawrence*, 539 U.S. at 567. Indeed, there was no consent of any description here. The victim specifically testified that she had not consented to any of MacDonald's actions. (App. 52). MacDonald himself testified, albeit implausibly, that it had been ***Johnson*** who had made the sexual advances, against MacDonald's wishes. (App. 83-84). Even under MacDonald's version, the kind of consensual actions involved in *Lawrence* and *Bowers* did not occur here.

Additionally, as discussed at pages 45-46 of this brief, petitioner's actions did not occur in private, as had been the case in both *Lawrence* and *Bowers*. Moreover, MacDonald was convicted of solicitation of another to commit a felony under Virginia Code § 18.2-29. Because MacDonald had been an adult at the time and had attempted to persuade the 17-year-old victim to commit a felony, the offense was a Class 5, not Class 6, felony. Unlike the statutes at issue in *Lawrence* and *Bowers*, which prohibited certain sexual acts by two people, here MacDonald's crime was

29

complete upon his solicitation of the minor to commit the sodomy, irrespective of her response to that overture. *See Huffman v. Commonwealth*, 284 S.E.2d 837, 839-840 (Va. 1981) (gravamen of crime of solicitation is incitement; defendant's guilt does not hinge upon whether crime solicited in fact was committed). Thus, in both *Grafmuller v. Commonwealth*, 698 S.E.2d 276 (Va. App. 2010), and *Podracky v. Commonwealth*, 662 S.E.2d 81 (Va. App. 2008), the defendant's conviction for use of a communication system to solicit a person he knew, or had reason to believe, was a minor for certain sexual offenses was upheld, even though in each instance the person being solicited was (unbeknownst to the defendant) an adult police officer.

*Lawrence* plainly reflects that the kind of conduct engaged in by MacDonald was not a constitutionally protected liberty interest under the Due Process Clause. Petitioner's arguments as to why the state appellate courts' rulings rejecting his constitutional challenge to § 18.2-361(A) nevertheless were erroneous fall far short of establishing his entitlement to relief under § 2254(d) or *Teague*.

First, regarding the state appellate courts' rulings that MacDonald had standing to raise a facial challenge only insofar as it adversely affected his own rights and that nothing in *Lawrence* facially invalidated § 18.2-361(A), petitioner maintains that the state courts "unreasonably applied a prudential standing rule." (Pet. Br. 8).

30

Petitioner further asserts that Supreme Court precedent establishes a facial attack is proper where a statute "'lacks any plainly legitimate sweep,'" *see United States v. Stevens*, 130 S.Ct. 1577, 1587 (2002), and that in the wake of *Lawrence* § 18.2-361(A) lacks such plainly legitimate sweep and is thus facially invalid. (Pet. Br. 10).

None of this demonstrates that the state appellate courts ruled unreasonably within the meaning of § 2254(d) or *Teague*. If the Virginia appellate courts "applied a prudential standing rule," that is more, not less, reason for a federal habeas court to defer to their rulings. By petitioner's own description the state courts exercised some measure of discretion in holding that MacDonald lacked standing to press his facial constitutionality claim. *Cf. Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (trial court's discretionary denial of severance motion not constitutional violation); *Sinistaj v. Burt*, 66 F.3d 804, 805-808 (6th Cir. 1995) (state court's discretionary ruling on motion to withdraw waiver of jury trial not cognizable issue on federal habeas corpus).

Moreover, on brief MacDonald has not cited a single case holding (or even implying) that *Lawrence* served to invalidate, without limitation, all state sodomy statutes such as Virginia's. Even more so, he has not cited any cases striking down solicitation convictions on the basis of *Lawrence*. Indeed, in a variety of settings

31

state and federal courts have repeatedly recognized, and given effect to, the limited holding in *Lawrence*. For example, in *Sintay v. Martel*, 769 F.Supp.2d 1197 (C.D. Cal. 2010), the court dismissed a federal habeas corpus petition raising equal protection challenges to various sexual offenses committed by the petitioner against minors. The court determined that the state appellate courts' rejection of petitioner's claim was reasonable under § 2254(d). *Id.* at 1206-1211. The federal district court concluded the state appellate courts had properly recognized that "*Lawrence* did not address the constitutionality of state statutes criminalizing sexual relations between adults and minors; thus, petitioner has not identified any clearly established Supreme Court precedent supporting his claim." *Id.* at 1209.

Likewise, in *State v. Oakley*, 605 S.E.2d 215 (N.C. App. 2004), the court rejected the defendant's reliance upon *Lawrence*, as a basis for arguing that the admission of certain photographs was unduly prejudicial (because they showed he was homosexual) on charges that he had had illegal sexual activity with a minor. The state court noted *Lawrence* had specifically pointed out that "the historical record supports enforcement of sodomy statutes in situations involving adults and minors." *Id.* at 321. The court further stated that the Supreme Court itself had pointed out "the narrow scope of its ruling" in *Lawrence*. *Id.* at 322. The state court accordingly held

32

that "*Lawrence*'s recognition of autonomy and personal choice within consensual adult relationships does not offer constitutional protection to evidence presented in a charge of criminally prohibited activity with minor...." *Id.  See also United States v. Bach*, 400 F.3d 622, 629 (8th Cir. 2005) (*Lawrence* distinguishable from case in which defendant had oral sex with minor and pressured him to pose nude for photographs and then produced and distributed child pornography); *United States v. Peterson*, 294 F.Supp.2d 797, 803 (D.S.C. 2003), *aff'd*, 145 Fed. Appx. 820 (4th Cir. 2005) (*Lawrence* protected "rights that free people possess in activities where there are no victims"; no due process liberty protection under *Lawrence* to possess child pornography); *Guerra v. Lombardi*, 336 S.W.3d 167, 170-171 (Mo. App. 2011) (petitioner properly required to register as sex offender because victim "was not an adult capable of consenting to sexual conduct"); *State v. Senters*, 699 N.W.2d 810, 816 (Neb. 2005) ("when a law regulates sexual conduct involving a minor, *Lawrence* is inapplicable"); *State v. Whiteley*, 616 S.E.2d 576, 580-581 (N.C.App. 2005) (state sodomy statute not facially unconstitutional; *Lawrence* permits prosecution "for conduct in which a minor is involved, conduct involving non-consensual or coercive sexual acts, conduct occurring in a public place, or conduct involving prostitution or solicitation").

33

Numerous other courts have recognized the limited scope of *Lawrence* and have not applied it to circumstances such as those presented in this case. *See, e.g., Lowe v. Swanson*, 663 F.3d 258 (6th Cir. 2011) (state court ruled reasonably under § 2254(d) in rejecting challenge to petitioner's conviction for engaging in sexual intercourse with 22-year-old stepdaughter, because state's concern in protecting family from harmful effects of intra-family sexual contact was important state interest *Lawrence* did not invalidate); *Anderson v. Morrow*, 371 F.3d 1027, 1032-1033 (9th Cir. 2004) (§ 2254(d) barred federal habeas relief on challenge to conviction for having sexual intercourse with moderately retarded woman; *Lawrence* "does not affect a state's legitimate interest and indeed, duty, to interpose when consent is in doubt"); *Williams v. Morgan*, 478 F.3d 1316, 1322 (11th Cir. 2007) (statute was constitutional that upheld state law prohibiting commercial distribution of certain sexual devices; "statute at issue in *Lawrence* criminalized *private* sexual conduct [while] statute at issue in this case prevents *public, commercial* activity") (emphasis in original); *Musser v. Mapes*, 2012 U.S. Dist. LEXIS 50535 at *37-38 (S.D. Ia. April 11, 2012) (state court ruling proper under § 2254(d) that upheld four convictions for criminal transmission of HIV; *Lawrence* involved two consenting adults, while state statute "is aimed at protecting *non*-consenting persons") (emphasis

in original); *Mauk v. Goodrich*, 2009 U.S. Dist. LEXIS 82674 at *5-6 (S.D.Ga. Sept. 10, 2009) (petitioner convicted of sodomy not entitled to relief under *Lawrence*; conduct in *Lawrence* was consensual, private homosexual behavior but "conduct leading to Petitioner's conviction was non-consensual, heterosexual behavior that took place outside the privacy of the home"); *State v. Thomas*, 891 So.2d 1233 (La. 2005) (*Lawrence* inapplicable to act of prostitution or public conduct); *State v. Van*, 688 N.W.2d 600, 614 (Neb. 2004) (defendant's various convictions upheld for actions taken in what initially was consensual homosexual relationship involving bondage and sadomasochism but as to which victim later withdrew consent; "nothing in *Lawrence* to even remotely suggest that nonconsensual sexual conduct is constitutionally protected under any circumstances").

Moreover, these cases collectively belie petitioner's *ipse dixit* assertion that § 18.2-361(A) lacks a plainly legitimate sweep and thus is facially unconstitutional. (Pet. Br. 10). To the contrary, numerous circumstances exist where the statute may be constitutionally applied. Indeed, many of them were present here, such as the fact that the victim was a minor, that she did not consent, and that MacDonald's solicitation did not occur in a private setting as in *Lawrence* or *Bowers*. Considering the unanimity of the above-cited decisions regarding the fact that *Lawrence* governs

35

only a particular set of circumstances and does not invalidate state sodomy laws *in toto*, the reasonableness of the state court rulings in the case at bar under § 2254(d) is apparent. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (where "our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law"); *Casey v. Musladin*, 549 U.S. 70, 76-77 (2006) (§ 2254(d) barred relief on claim that victim's family improperly wore victim's image during trial; fact that "lower courts have diverged widely in their treatment of" similar claims reflected "lack of guidance from" Supreme Court).

Petitioner's reliance upon *United States v. Stevens* is misplaced. *Stevens* addressed a First Amendment challenge to an animal cruelty statute. It was within that context that the Supreme Court stated that a First Amendment facial challenge to a statute may be sustained if "'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" 130 S.Ct. at 1587. Such First Amendment claims, however, raised discrete issues, as *Stevens* itself made clear. The Supreme Court specifically pointed out: "To succeed in a typical facial attack, Stevens would have to establish 'that no set of circumstances exists under which [the animal cruelty statute] would be valid,' or that

36

the statute lacks any 'plainly legitimate sweep....'" *Id* (citations omitted). Obviously, there are any number of circumstances under which Virginia's sodomy statute would be valid, so that, by the United States Supreme Court's precepts, the statute thus does not lack a plainly legitimate sweep.

As the district court correctly concluded, the state appellate courts properly cited *County Court of Ulster County* to reject MacDonald's facial challenge to the constitutionality of Virginia's sodomy statute.  (App. 153, 407; 630 S.E.2d at 756). Indeed, the Supreme Court has reaffirmed its holding in *County Court of Ulster County*.  In *Clements v. Fashing*, 457 U.S. 1957 (1982), a number of Texas state office holders raised a federal constitutional challenge to provisions of the Texas Constitution that limited a public official's ability to run for another public office. Noting that of the plaintiffs in the case only one, a justice of the peace, had alleged that he would run for the state legislature, the Supreme Court stated that the issue was whether the challenged state constitutional provision could be applied to a justice of the peace in a manner consistent with the Equal Protection Clause.  457 U.S. at 966. As to this point, the Supreme Court stated:

> A litigant has standing to challenge the constitutionality of a statute only insofar as it adversely affects his own rights. "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a

37

> statute may constitutionally be applied will not be heard to
> challenge that statute on the ground that it may
> conceivably be applied unconstitutionally to others, in
> other situations not before the Court."

*Id.* at 966 n.3. *See also United States v. Williams*, 553 U.S. 285, 304 (2008) (outside

First Amendment context, person "who engages in some conduct that is clearly

proscribed cannot complain of the vagueness of the law as applied to the conduct of

others"); *Chapman v. United States*, 500 U.S. 453, 467 (1991) (in case not

implicating First Amendment "vagueness claim must be evaluated as the statute is

applied to the facts of this case");*United States v. Salerno*, 481 U.S. 739, 745 (1987)

("A facial challenge to a legislative Act is, of course, the most difficult challenge to

mount successfully, since the challenger must establish that no set of circumstances

exist under which the Act would be valid."); *Members of City Council v. Taxpayers

for Vincent*, 466 U.S. 789, 797 (1984) ("general rule [is] that constitutional

adjudication requires a review of the application of a statute to the conduct of the

party before the Court"); *New York v. Ferber*, 458 U.S. 747, 767 (1982) (same as

*Fashing*).

Lower courts have likewise followed this principle, thereby confirming that a

reasonable jurist within the meaning of *Teague* could have rejected MacDonald's

facial constitutionality claim.[4]  *See, e.g., United States v. Wicks*, 132 F.3d 383, 389 (7th Cir. 1997); *United States v. Friday*, 525 F.3d 938, 951 (10th Cir. 2008); *Jackson v. Thornburg*, 907 F.2d 194, 199 (D.C. Cir. 1990); *In Re:  Search of the Premises of Carl Ray Wilson*, 153 F.Supp.2d 1020, 1022 (E.D.Ark. 2001).

Next, petitioner's arguments challenging the state appellate courts' rulings upholding § 18.2-361(A) as applied to him are, in important respects, procedurally barred and in any case fall well short of establishing his entitlement to relief under § 2254(d) and *Teague*.  First, petitioner's arguments, in large measure, raise issues regarding the proper meaning of various state statutes and the legislative intent underlying them.  (App. 153-154, 174-176, 199-201; 630 S.E.2d at 756-757).  It is fundamental that all such state law-based arguments are not cognizable on federal habeas corpus, and that the state appellate courts' construction of relevant state laws is binding.  *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 395 (1988).

---

[4] In contrast to § 2254(d), which concerns itself only with Supreme Court precedent, the reasonable jurist test in *Teague* properly considers decisions of other courts as well.  *See Williams*, 529 U.S. at 412.

39

Beyond this, the state appellate courts' rejection of MacDonald's statutory-based arguments passed muster under § 2254(d) and *Teague*. In MacDonald's Prince George appeal, which the Court of Appeals in his Colonial Heights appeal incorporated by reference in rejecting his "as applied" constitutional challenge, the Court of Appeals noted petitioner's inter-related reliance upon Virginia Code §§ 18.2-361(A), 18.2-63, and 18.2-371. (App. 153-154). 630 S.E.2d at 756-757.[5] Based upon these three statutes, MacDonald argued on direct appeal that they "establish an age of consent of fifteen for sexual behavior in Virginia and that, therefore, sodomy involving people fifteen and older should be viewed as no different from sodomy involving those eighteen and older...Thus, for consent purposes, anyone age fifteen and older is an 'adult' in Virginia with regard to sexual behavior." 630 S.E.2d at 757. In turn, MacDonald invoked *Lawrence*, which protects private consensual behavior between adults, as establishing the unconstitutionality of § 18.2-361(A) as applied to him. *Id.*

The Court of Appeals reasonably (and, for purposes of construing the state statutes, conclusively) rejected this argument:

---

[5] On brief, MacDonald relies on other Virginia statutes as well. (Pet. Br. 18-20). Any argument based on these newly-advanced statutes is barred. *See Cullen v. Pinholster*, 131 S.Ct. 1388 (2011); *Gray v. Netherland*, supra.

40

> Appellant errs, however, in his interpretation of the statutes as defining "adult." The Supreme Court of Virginia has established that determining the age of majority is within the power of the legislature. While Code § 18.2-371 allows for people aged fifteen to seventeen to consent to sexual intercourse, the statute itself still refers to those people as "children." Additionally, Code §§ 1-203, 1-204, and 1-207 together define "adult" as a person age eighteen or more, unless a statute specifically provides otherwise. Code § 18.2-361(A) does not change this standard definition of "adult." Therefore, appellant's equation of the ability to consent to sexual intercourse with being an "adult" fails.

*Id.*[6] Significantly, the Court of Appeals pointed to decisions from other jurisdictions rejecting equivalent arguments. *Id.* For example, in *United States v. Bach*, *supra*, the petitioner raised a *Lawrence*-based challenge to his convictions for various federal offenses involving minors and the production and distribution of pornography, on the ground that the minor in *Bach* was 16 while the age of consent under both state and federal law likewise was 16. 400 F.2d at 628. The Eighth Circuit rejected this argument, holding that the statutory definition of a minor as someone under 18 in the applicable federal statutes was appropriate and thereby defeated Bach's *Lawrence* argument. *Id.* at 628-629. *See also Senters*, 699 N.W.2d at 816-818.

The district court appropriately deferred to the state court ruling under § 2254(d). (App. 407-408). Indeed, the district court rejected an identical argument in

---

[6] This ruling hardly stands alone. The Supreme Court of Virginia came to similar conclusions in MacDonald's Prince George direct appeal. 645 S.E.2d at 922-924.

41

dismissing MacDonald's federal habeas corpus petition challenging his Prince

George convictions in *MacDonald v. Johnson*, 2009 U.S. Dist. LEXIS 94563, Civil

Action No. 1:08cv781.  In that dismissal order, the district court stated:

> MacDonald argues that the trial court "rewrote the law"
> when convicting him under § 18.2-361, which makes it a
> felony to engage in oral or anal sexual relations with
> anyone.  He alleges that the court improperly added an age
> requirement of "under the age of eighteen" when applying
> the statute to him, and that the statute as written is
> unconstitutional as a result of *Lawrence v. Texas*….  The
> Court of Appeals of Virginia considered this claim on
> direct appeal and found the statute constitutional….Thus,
> this Court must evaluate Claim 3 under the standard
> articulated in *Williams v. Taylor* [*i.e.*, § 2254(d)].
>
> The Court of Appeals' determination is based on clearly
> established federal law.  As the court noted, Virginia
> considers persons aged sixteen and seventeen to be
> children, and the Supreme Court in *Lawrence* explicitly
> stated that the ruling did not apply to sexual acts involving
> children….Thus, as the Court of Appeals of Virginia
> found, the statute is not unconstitutional as applied to
> MacDonald, and Claim 3 fails.

2009 U.S. Dist. LEXIS 94563 at *13-15.

Contrary to MacDonald's arguments on brief, the state appellate courts'

construction of § 18.2-361(A) to exclude the circumstances identified in *Lawrence*

from its application is something courts routinely do, and is far from some

42

justification for striking it down on federal habeas. "It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions....Thus, the courts will take pains to give a statute a limiting construction in order to avoid a constitutional difficulty." *Allstate Insurance Co. v. Serio*, 261 F.3d 143, 149-150 (2d Cir. 2001). The Supreme Court has stated that "'the elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *INS v. St. Cyr*, 533 U.S. 289, 300 n.12 (2001). Thus, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problem." *Id.* at 299-300 (citations omitted).

The numerous state and federal decisions discussed above obviously did not regard their own actions in limiting *Lawrence* as some usurping of the legislature's province. The state appellate courts' rulings in this case comported with this approach regularly undertaken by the courts. Consequently, the state courts here hardly acted unreasonably within the meaning of § 2254(d) and *Teague* in limiting § 18.2-361(A) in a manner consistent with *Lawrence*.

Significantly, this Court denied a certificate of appealability and dismissed the

43

appeal in the Prince George case. *MacDonald v. Johnson*, No. 09-7973 (June 24, 2010). On July 27, 2010, this Court denied MacDonald's petition for rehearing. Then, the United States Supreme Court denied certiorari review in the Prince George case on February 28, 2011. 131 S.Ct. 1574 (2011). In his certiorari petition, much as in the present appeal, MacDonald maintained that the Virginia appellate courts had impermissibly rewritten the applicable state statutes.

This Court's rejection of MacDonald's statutory-based arguments in the Prince George appeal (which of course occurred long after *Lawrence*) should be deemed the law of the case for purposes of the present appeal. *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from litigating the legal issue"). If so, there is no reason to hold differently where, as here, the same petitioner raises identical legal claims in two cases. Further, the present claim should be barred under principles of collateral estoppel. *See Weinberger v. Tucker*, 510 F.3d 486, 491-492 (4th Cir. 2007).

Even if this Court's prior ruling in the Prince George case is deemed something other than collateral estoppel or the law of the case, it surely is entitled to substantial weight in assessing the merits of the present appeal. *See United States v.*

44

*Lentz*, 524 F.3d 501 (4th Cir. 2008), quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own..., although as a rule courts should be loathe to do so in the absence of extraordinary circumstances").  To state it differently, in order to hold that the state courts ruled unreasonably in the Colonial Heights case within the meaning of § 2254(d) and *Teague*, this Court, by necessity, would have to conclude that its own prior ruling in the closely related Prince George case was not merely wrong, but unreasonably so.

Finally, for several other reasons MacDonald cannot establish that the state courts unreasonably rejected his "as applied" constitutional argument.  First, the record plainly confirms that there was no consent in this case.[7]  Furthermore, without question the sexual incident that both Johnson and petitioner testified took place outside Johnson's grandmother's home occurred in a public location.  (App. 51, 82-84).  Indeed, during the victim's alleged sexual accosting of petitioner (as described in his testimony), a man came out of the home of Johnson's grandmother and, after turning on a porch light, yelled "Who's out there."  (App. 57-58, 83-84).  Likewise,

---

[7] In sharp contrast, in the Prince George case, MacDonald engaged in two acts of private, consensual intercourse and oral sodomy with one minor and on two other occasions had similar private, consensual sexual encounters with another minor.  630 S.E.2d at 755-756.

45

when Johnson then drove MacDonald back to the Home Depot, he continued his sexual overtures.  (App. 51-52).

Considering that MacDonald completed the crime of solicitation when he tried to induce the victim to commit sodomy, see page 29 of this brief, the public nature of the crime is plain.  Further, even what petitioner proposed — that he and Johnson commit sodomy in or near the shed in the yard of her grandmother's house — would not have been public, for purposes of *Lawrence*.  Johnson specifically testified that the shed was "observable from the road."  (App. 54).  In his testimony, Detective Early said that someone in the shed would not be in public, but only so long as "the door was shut."  (App. 64).  MacDonald merely "pointed to a shed also in the yard and said you can pull your car in there and we could go back there and have sex." (App. 51).  None of this removed the possibility that a third party might observe the two in or near the shed.

> ### B.     THE SUPREME COURT OF VIRGINIA CORRECTLY DISMISSED PETITIONER'S EX POST FACTO CLAIM IN HIS STATE HABEAS CORPUS PETITION AS PROCEDURALLY DEFAULTED UNDER THE RULE IN *PARRIGAN*.

MacDonald maintains that, even if § 18.2-361(A) retains some validity after *Lawrence*, it was unconstitutionally applied to him for four reasons, one of

46

which was that the Virginia appellate courts' "rewriting" of the statute deprived him of fair notice of the crime with which he was charged. (Pet. Br. 7). Petitioner correctly acknowledges that the ex post facto clause "limits only legislative action," but invokes the due process right that "persons have a right to fair warning of conduct that would give rise to criminal penalties...." (Pet. Br. 20 n.9). Petitioner says that he properly advanced his ex post facto claim at both trial and on direct appeal and thus did not default on it under the rule in *Parrigan*. (Pet. Br. 28).

In its order dismissing MacDonald's state habeas corpus petition, the Supreme Court of Virginia expressly held that petitioner had procedurally defaulted on any ex post facto claim, for failure to raise it on appeal. (App. 270). Thereafter, the district court enforced this procedural default ruling, insofar as MacDonald's ex post facto clause contention raised some issue distinct from his facial attack on § 18.2-361(A). (App. 404-406). The record demonstrates the correctness of both of these rulings and their preclusive impact on federal habeas review of this defaulted issue.

In his petition for appeal and opening brief in the Court of Appeals of Virginia, MacDonald raised only one Question Presented on his solicitation conviction: "Did the trial court err in finding that Virginia Code Section 18.2-361(A) remains a valid exercise of the police power of the state, surviving a substantive due process

47

constitutional challenge?" (App. 130; Supp. App. 5). In his petition for appeal in the Supreme Court of Virginia, petitioner did not assign as error any ruling by the trial court, but he challenged the decision of the Court of Appeals of Virginia on two grounds — its holdings that he "did not have standing to mount a facial attack on the constitutionality of Virginia Code § 18.2-361(A)," and that that statute "survives an as applied constitutional attack where the conduct alleged involved an adult and a minor who was above the age of consent in Virginia." (App. 160). Thus, in his questions presented in the Court of Appeals and his assignments of error in the Supreme Court of Virginia, MacDonald made no mention whatever of any ex post facto issues. Settled procedural rules in Virginia demonstrate that MacDonald could not properly argue beyond the terms of his questions presented and assignments of error.[8]

Virginia law is clear that appeals "are awarded based on assignments of error, a required part of every petition for appeal." *Hamilton Development Co. v. Broad Rock Club*, 445 S.E.2d 140, 143 (Va. 1994). Consistent with this principle, the

---

[8] Recently, Rule 5A:12(c)(1) of the Rules of the Supreme Court of Virginia was amended, so that an appellant in the Court of Appeals of Virginia, just as in the Supreme Court of Virginia, must set forth assignments of error, rather than questions presented. This amendment, though, does not affect the reviewability of MacDonald's ex post facto claim.

48

Supreme Court of Virginia in *Hamilton Development Co.* addressed only the argument the appellant had advanced at trial, but not other contentions advanced for the first time on appeal.  The state court noted that the appellant had "impermissibly...altered the language of an assignment of error to argue a question never presented to the trial court."  445 S.E.2d at 142-143.

Similarly, in *Carroll v. Commonwealth*, 701 S.E.2d 414 (Va. 2010), the defendant had entered an *Alford* guilty plea to a rape charge pursuant to a plea agreement.  Later, the defendant was terminated from a sex-offender treatment group program to which he had been assigned by his probation officer for sex offender therapy, because he refused to admit his guilt to the rape offense.  This resulted in the revocation of the defendant's probation and his being sentenced to a five-year prison term, suspended on the special condition that he enter and complete a sex offender treatment as directed by his probation officer.

In his petition for appeal in the Court of Appeals, the defendant in *Carroll* recited as one question presented a claim that the trial court had wrongly found him in violation of probation based solely on his refusal to admit to rape during the sex offender therapy, given that the Commonwealth had agreed to and the Court had accepted an *Alford* plea.  The defendant also argued in the Court of Appeals that the

49

revocation of his probation constituted a breach of the plea agreement. That court,

however, did not reach that issue on the ground that it was not encompassed in any of

the questions presented in the defendant's petition for appeal in that court. 701

S.E.2d at 417.

Subsequently, the Supreme Court of Virginia upheld the ruling of the Court of

Appeals.

> Obviously, there is some connection between the plea
> agreement and the *Alford* plea in this case, but Carroll
> failed to make the connection in his Statement of the
> Questions Presented. Like the requirement in our Rule
> 5:17(c) for assignments of error, the purpose of questions
> presented in the Court of Appeals is to point out the errors
> with reasonable certainty in order to direct [the] court and
> opposing counsel to the points on which appellant intends
> to ask a reversal of the judgment, and limit the discussion
> to these points. And like assignments of error under this
> Court's Rule 5:17(c), it was the duty of Carroll's counsel
> to lay his finger on the error in his Statement of Questions
> Presented in the Court of Appeals.

701 S.E.2d at 418. *See also Ortiz v. Commonwealth*, 667 S.E.2d 751, 756 (Va. 2008)

(defendant's assignment of error challenged only trial court's denial of motion to

appoint particular doctor as expert and "does not relate to the trial court's denial of

his motion to permit [that individual] to testify"; consequently, defendant waived

argument regarding exclusion of doctor's testimony); *Friedline v. Commonwealth*, 576 S.E.2d 491, 494 (Va. 2003) (assignments of error insufficient to preserve claim that trial counsel's representation failed under performance prong of *Strickland*); *Yeatts v. Murray*, 455 S.E.2d 18, 21-22 (Va. 1995) (assignment of error challenging circuit court's failure to conduct evidentiary hearing did not preserve ineffective claims). *Cf. Pethtel v. Ballard*, 617 F.3d 299, 306 (4th Cir. 2010) (petitioner waived due process claim by not raising it in state courts; "[o]blique references which hint that a theory may be lurking in the woodwork will not turn the trick").

Consistent with these authorities, the Court of Appeals of Virginia never even hinted at any ex post facto claim in deciding MacDonald's direct appeal. (App. 152-156). Likewise, the state court's opinion in MacDonald's Prince George appeal, which formed the basis for its opinion in the present matter, never suggested any cognizable ex post facto clause issue. Therefore, the Supreme Court of Virginia's procedural default finding on state habeas corpus was correct. The fact that MacDonald, in passing, mentioned a possible ex post facto violation did not, standing alone, render it a cognizable issue on direct appeal. (Supp. App. 20). This is especially true, considering that the only relevant question presented contested "the trial court['s error]" in convicting MacDonald. (Supp. App. 5).

51

Moreover, MacDonald could have challenged the failure of the Court of Appeals of Virginia to address any ex post facto claim when he appealed the case to the Supreme Court of Virginia, but he did not do so.  Although petitioner challenged the ruling of the Court of Appeals in two respects, he raised no assignment of error and did not otherwise argue that the state intermediate appellate court had wrongly failed to decide any ex post facto issue or had misapprehended the issues he advanced in that court.  Consequently, on this additional ground the state habeas procedural default ruling of the Supreme Court of Virginia was correct.

Indeed, in *Gray v. Netherland*, 99 F.3d 158 (4th Cir. 1996), this Court effectively held as much.  In *Gray*, a Virginia death row habeas petitioner had raised separate federal habeas claims that the prosecution violated his due process right both by not giving him adequate notice of some of the evidence it intended to present at the penalty phase of his trial and, further, by misleading petitioner about the evidence it intended to use at sentencing.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  The Supreme Court rejected the first of these two claims under *Teague* but remanded to this Court the misrepresentation claim, noting that there was "some ambiguity" as to whether it had been raised or addressed in the district court or this Court.  *Id.* at 165-166, 166-171.  On remand, this Court held that Gray had not raised his

52

misrepresentation claim at any point in the state court proceedings and likewise had

not done so in the federal proceedings.  99 F.3d at 162-166.  Regarding the latter

ruling, this Court stated:

> In our initial opinion in this matter, we made no reference to any distinct
> claim of misrepresentation.  Gray claims that he raised this argument,
> but the court mistakenly overlooked it.  If this is the case, it is difficult
> to understand why Gray failed to raise this as a grounds for granting his
> Petition for Rehearing.  Instead, in his petition, Gray, as he did in his
> initial briefs before this Court, relied on inadequate notice as the legal
> basis for his claim....  Gray's continued reliance on lack of notice and
> his failure to raise misrepresentation as a distinct legal claim before this
> court undercuts his contention that he vigorously pressed
> misrepresentation in the first instance.

99 F.3d at 166 (citation omitted).

Likewise, MacDonald never complained in the Supreme Court of Virginia that

the Court of Appeals had wrongly failed to reach some ex post facto contention.  At

best, MacDonald can refer only to "scattered" references to an ex post facto issue in

his state appellate briefs.  *Id.*  Because, however, he did not properly assign as error

in either state appellate court an ex post facto claim, he procedurally defaulted on it

under the rule in *Parrigan*, as the Supreme Court of Virginia later ruled on state

habeas.  Thus, the district court rightly held that any ex post facto contention, as

distinct from MacDonald's facial and as applied constitutional arguments, was not

53

reviewable.[9]

### C.    THE DISTRICT COURT CORRECTLY DISMISSED AS PROCEDURALLY BARRED PETITIONER'S EQUAL PROTECTION CLAIM.

As another basis for asserting that, even if § 18.2-361(A) has some validity after *Lawrence* it still could not be constitutionally applied to him, petitioner says that the state appellate courts' rulings violated his equal protection rights "by irrationally punishing the solicitation of sodomy 10 times as harshly as the solicitation of sexual intercourse." (Pet. Br. 7, 22-24). The district court held that MacDonald had not properly raised the equal protection claim in the state court proceedings and that, if he were to do so now, it would be procedurally defaulted under § 8.01-654(B)(2), Virginia's abuse of the writ statute. Further, the claim would be simultaneously exhausted and defaulted for purposes of federal habeas corpus review, absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. (App. 408-409). *See Gray*, 518 U.S. at 161-162; *Bassette v. Thompson*, 915 F.2d 932, 935-937 (4th Cir. 1990). Concluding that MacDonald had

---

[9] Moreover, both this Court's prior decision in MacDonald's Prince George appeal and the cases discussed at pp 31-35 of this brief virtually compel the conclusion that petitioner's ex post facto claim is a new rule under *Teague*.

made no such showing, the district court held his equal protection claim procedurally barred. (App. 410).

The record plainly supports this ruling. In the original trial and direct appeal proceedings, MacDonald instead raised only due process arguments. Indeed, his pleading in the trial court was entitled a "motion to dismiss on due process grounds." (App. 7). Then, in both the Court of Appeals of Virginia and the Supreme Court of Virginia, MacDonald specifically noted that in *Lawrence* the Supreme Court had "elected to decide the case on Due Process grounds rather than equal protection grounds," as a basis for striking down the Texas statute *in toto*. (App. 140-141, 171; Supp. App. 15). Likewise, the opinion of the Court of Appeals of Virginia, as well as its related opinion in the Prince George appeal, contained no indication it was addressing any equal protection claim. (App. 153-154). 630 S.E.2d at 756-758. And, MacDonald did not argue in his second-tier appeal in the Supreme Court of Virginia that the Court of Appeals of Virginia had wrongly failed to address some equal protection claim. (App. 160).

On brief, MacDonald does not assert that he ever raised any equal protection claim at trial or on direct appeal. Instead, he maintains that in his state habeas petition he "repeatedly asserted equal protection claims," thereby undercutting the

district court's reliance upon § 8.01-654(B)(2). (Pet. Br. 28-29). In the alternative, MacDonald says that the Supreme Court of Virginia's habeas dismissal order did not refer to any equal protection claim, so that it could not have relied on any state law ground in denying it. (Pet. 29-30).

None of this demonstrates the reviewability of any present equal protection claim. First, the time for MacDonald to have raised an equal protection claim was at trial and thereafter on direct appeal. Once the case made its way to state habeas, petitioner had already procedurally defaulted on any equal protection claim, and anything that happened thereafter could not change this fact or somehow provide a basis for reviewing the equal protection claim. *See Ohree v. Commonwealth*, 494 S.E.2d 484, 491 (Va. App. 1998) (state appellate procedural default rule applies to newly-advanced constitutional claims).

Moreover, the obvious reason the Supreme Court of Virginia made no mention in its state habeas dismissal order of any equal protection claim was that it did not deem MacDonald to have raised such an argument. (App. 267-271). Likewise, respondent did not understand petitioner to raise any equal protection claim in his state habeas petition. (App. 257). Considering that MacDonald did not include any equal protection claim in his "grounds" for state habeas relief, both the Supreme

56

Court of Virginia and respondent hardly reached unreasonable conclusions regarding the scope of MacDonald's state habeas petition.  (App. 213).  *See Gray v. Netherland*, 99 F.3d at 165 (both respondent and Fourth Circuit understood petitioner to argue that he had received inadequate notice of evidence prosecution planned to introduce, not that it deliberately misled him about such evidence).

> **D.  PETITIONER HAS PROCEDURALLY DEFAULTED ON HIS CLAIM THAT THE STATE APPELLATE COURTS' RULINGS VIOLATED THE SUBSTANTIVE AND DUE PROCESS AND EQUAL PROTECTION RIGHTS OF MINORS.**

As a final basis for arguing that, even if § 18.2-361(A) otherwise has some continuing validity it cannot be constitutionally applied to him, MacDonald says that the state appellate court rulings violated "the due process right of 15 to 18-year-olds to engage in private, consensual sex with each other, and unlawfully discriminates against same-sex couples of that same group."  (Pet. Br. 7, 25).  MacDonald says that the state appellate courts' construction of § 18.2-361(A) "is further evidence [of] its additional unconstitutional effects...."  (Pet. Br. 25).  MacDonald, however, never advanced any such arguments in the state proceedings, and he can no more do so now than could the petitioner in *Gray*.

At no point at trial and on direct  appeal did petitioner ever advance the

57

present arguments that minors as a class suffered some particular constitutional deprivations. (Pet. Br. 25-27). On the contrary, petitioner argued that the victim here, under state law, was not a minor for purposes of *Lawrence*. (App. 144-145, 173-175, Supp. App. 17-19). Otherwise, MacDonald complained only that the statute was unconstitutional as applied to ***him***. And, in neither his state habeas nor federal habeas petitions did petitioner allege, as a basis for relief, that minors had suffered various constitutional violations based on the state appellate courts' rulings in this case. Certainly, in its order dismissing MacDonald's federal habeas petition, the district court did not identify any such contention as an allegation. (App. 402). Thus, MacDonald's defaults, both in the state court and in the lower court, bar this Court's review of the present claim.[10]

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,

Tim Moose,
Keith Holder,
        Respondent-Appellee herein.

---

[10] Moreover, this claim obviously constitutes a new rule under *Teague* and its progeny.

58

By:  /s/Robert H. Anderson, III
                        Senior Assistant Attorney General

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Robert H. Anderson, III
Senior Assistant Attorney General

Office of the Attorney General
900 East Main Street
Richmond, Virginia  23219
(804) 786-9642

Counsel for Tim Moose and Keith Holder

June 29, 2012

Certificate Of Compliance With Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains  13,153 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. app. P. 32 (a)(6) because it has been prepared in a proportionally spaced typeface using serif typeface in Microsoft Word 7, Times New Roman, 14 point.

59

/s/ Robert H. Anderson, III
   Senior Assistant Attorney General
   Counsel for Tim Moose and Keith
   Holder
   June 29, 2012

## Certificate Of Service

I hereby certify that on June 29, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:  Benjamin E. Rosenberg and Joshua D. N. Hess.

/s/ Robert H. Anderson, III
   Senior Assistant Attorney General
   Counsel for Tim Moose and Keith
   Holder
   June 29, 2012

60