NO. 11-7427

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

WILLIAM SCOTT MACDONALD,

*Petitioner - Appellant*

v.

TIM MOOSE,

*Respondent - Appellee*

and

KEITH HOLDER,

*Respondent*

---

ON APPEAL FROM AN ORDER OF
The Honorable Gerald Bruce Lee,
United States District Court for the Eastern District of Virginia

---

**REPLY BRIEF OF APPELLANT**

---

Benjamin E. Rosenberg
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

Joshua D. N. Hess
DECHERT LLP
One Maritime Plaza, Suite 2300
San Francisco, CA 94111
Telephone:  (415) 262-4500
Facsimile:  (415) 262-4555

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

Page

I.    MacDonald Satisfies The Section 2254 Standard ...................................2

II.   The State Courts Violated Clearly Established Federal Law
      In Refusing To Consider MacDonald's Facial Challenge To
      Section 18.2-361(A), Which Cannot Stand After *Lawrence* ......................6

      A.    Section 18.2-361(A) Is Facially Invalid Under *Lawrence* ..................6

      B.    The Virginia Courts Unreasonably Applied, And Acted
            Contrary To, Established Federal Law In Declining To
            Consider MacDonald's Facial Challenge.............................................11

III.  The Application Of Section 18.2-361(A) To MacDonald Was
      Contrary To Clearly Established Federal Law ..............................................13

IV.   The Commonwealth Has Failed To Establish That MacDonald's
      "*Ex Post Facto*" And Equal Protection Claims Are
      Procedurally Barred .....................................................................................21

      A.    The Commonwealth Has Failed To Meet Its Burden
            To Establish That MacDonald's "*Ex Post Facto*" Claim
            Was Procedurally Defaulted.................................................................22

      B.    The Commonwealth Also Has Failed To Meet Its Burden
            Of Establishing Procedural Default Of MacDonald's
            Equal Protection Claim .......................................................................25

CONCLUSION .....................................................................................................27

i

## <u>TABLE OF AUTHORITIES</u>

**C**ASES

**Page(s)**

*Allstate Ins. Co. v. Serio,*
    261 F.3d 143(2d Cir. 2001) ...............................................................14

*Amell v. Smith,*
    No. 5:10 CV 191, 2010 WL 5283295 (N.D. Ohio Nov. 23, 2010) ....................17

*American Trucking Assns., Inc. v. Smith,*
    496 U.S. 167 (1990) ........................................................................7

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006) .......................................................................10

*Barrows v. Jackson,*
    346 U.S. 249 (1953) .......................................................................11

*Bond v. United States,*
    131 S. Ct. 2355 (2011) ..............................................................11, 13

*Boos v. Barry,*
    485 U.S. 312 (1988) .......................................................................14

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964) .......................................................................16

*Bousley v. United States,*
    523 U.S. 614 (1998) ........................................................................6

*Bowers v. Hardwick,*
    478 U.S. 186 (1986) ......................................................................6, 8

*Carey v. Population Servs. Int'l,*
    431 U.S. 678 (1977) .......................................................................11

*Cavazos v. Smith,*
    132 S. Ct. 2 (2011) .........................................................................5

*County of Amherst v. Brockman,*
    297 S.E.2d 805 (Va. 1982) ...............................................................19

ii

*County Court of Ulster County v. Allen*,
442 U.S. 140 (1979)........................................................................12

*Felkner v. Jackson*,
131 S.Ct. 1305 (2011).......................................................................5

*Goodridge v. Dep't of Pub. Health*,
798 N.E.2d 941 (Mass. 2003) .........................................................4

*Gray v. Netherland*,
518 U.S. 152 (1996)........................................................................26

*Gray v. Netherland*,
99 F.3d 158 (4th Cir. 1996) ...........................................................23

*Greene v. Fisher*,
132 S. Ct. 38 (2011) .........................................................................4

*Harrington v. Richter*,
131 S. Ct. 770 (2010) .......................................................................4

*Harris v. Reed*,
489 U.S. 255 (1989).......................................................................27

*Horn v. Banks*,
536 U.S. 266 (2002)..........................................................................5

*Howes v. Fields*,
132 S. Ct. 1181 (2012).................................................................5, 8

*INS v. St. Cyr*,
533 U.S. 289 (2001)........................................................................14

*Jenkins v. Anderson*,
447 U.S. 231 (1980)........................................................................26

*Johnson v. Commonwealth*,
561 S.E.2d 1 (Va. App. 2002) .......................................................19

*Jones v. Sussex I State Prison*,
591 F.3d 707 (4th Cir. 2010) ..............................................21, 22, 23

*Karouni v. Gonzales*,
  399 F.3d 1163 (9th Cir. 2005) ............................................................... 3

*Lawrence v. Texas*,
  539 U.S. 558 (2003) .................................................................... *passim*

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011) ............................................................... 14

*Martin v. Hunter's Lessee*,
  14 U.S. 304 (1816) ............................................................................ 7

*Martin v. Ziherl*,
  607 S.E.2d 367 (Va. 2005) .................................................................. 4

*Maryland v. Baltimore Radio Show, Inc.*,
  338 U.S. 912 (1950) ......................................................................... 21

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
  682 F.3d. 1 (1st Cir. 2012) ................................................................. 3

*McDonald v. Virginia*,
  645 S.E.2d 918 (Va. 2007) .......................................................... 17, 18

*Perry v. Brown*,
  671 F.3d 1052 (9th Cir. 2012) ............................................................. 3

*Poole v. Wood*,
  45 F.3d 246 (8th Cir. 1995) ............................................................... 17

*Reliable Consultants, Inc. v. Earle*,
  517 F.3d 738 (5th Cir. 2008) .............................................................. 3

*Rieck v. Cockrell*,
  321 F.3d 487 (5th Cir. 2003) ............................................................. 17

*Sinistaj v. Burt*,
  66 F.3d 804 (6th Cir. 1995) ............................................................... 13

*Slayton v. Parrigan*,
  215 Va. 27 (1974) ...................................................... 22, 23, 24, 25

iv

*Stanford v. Parker*,
266 F.3d 442 (6th Cir. 2001) ...........................................................13

*State v. Limon*,
122 P.3d 22 (Kan. 2005)....................................................................3

*State v. Stiller*,
590 S.E. 2d 305 (N.C. App. 2004).....................................................9

*State v. Whiteley*,
616 S.E.2d 576 (N.C. App. 2005)....................................................8-9

*Teague v. Lane*,
489 U.S. 288 (1989)........................................................................5, 6

*Trest v. Cain*,
522 U.S. 87 (1997)........................................................................25-26

*United States ex rel. Bocian v. Godinez*,
No. 94 C 6147, 1995 WL 549020 (N.D. Ill. Sep. 12, 1995) ............17

*United States v. Bach*,
400 F.3d 622 (8th Cir. 2005) ...........................................................18

*United States v. Raines*,
362 U.S. 17 (1960)...........................................................................11

*Wetzel v. Lambert*,
132 S. Ct. 1195 (2012)......................................................................5

## STATUTES

**Page(s)**

18 U.S.C. § 2251.................................................................................18

18 U.S.C. §2252..................................................................................18

18 U.S.C. § 2252A...............................................................................18

28 U.S.C. § 2254..........................................................................2, 4, 8

Ga. Code Ann. § 16-6-2.........................................................................8

N.C. Gen. Stat. § 14-177.......................................................................9

Va. Code Ann. § 16.1-228 ....................................................................15, 16, 18

Va. Code Ann. § 18.2-29 .....................................................................................1

Va. Code Ann. § 18.2-361 ........................................................................*passim*

Va. Code Ann. § 18.2-370 ...............................................................................15

Va. Code Ann. § 18.2-371 ......................................................................1, 16, 18

**OTHER AUTHORITIES**

**Page(s)**

4th Cir. L.R. 36(b).............................................................................................21

Appellant William S. MacDonald ("MacDonald") was convicted in August 2005 of soliciting a person to commit a felony in violation of Va. Code Ann. § 18.2-29 and of contributing to the delinquency of a minor, in violation of Va. Code Ann. § 18.2-371.[1] The predicate offense underlying both counts of conviction was Va. Code Ann. § 18.2-361(A), which made it a crime to engage in sodomy or to submit to sodomy. In his opening brief, MacDonald demonstrated that his petition for a writ of *habeas corpus* should be granted because the United Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), struck down as violative of the Due Process Clause of the federal Constitution a statute that was in all relevant respects identical to Section 18.2-361(A). MacDonald also demonstrated that his conviction for solicitation was not sound because the person whom MacDonald allegedly solicited to engage in the crime of sodomy did not belong to the class of people intended to be prosecuted under Section 18.2-361(A).

---

[1]    The Commonwealth asserts that it "is not clear" whether MacDonald is challenging his conviction for contributing to the delinquency of a minor under Section 18.2-371, and that MacDonald "raises no arguments specific to that offense." *See* Brief of Appellee (hereinafter, "Opp.") at 11, n.2. MacDonald has consistently challenged his conviction under Section 18.2-370, however, including in this Court. *See, e.g.*, Brief of Appellant (hereinafter, "Br.") at 6 ("MacDonald's convictions under Sections 18.2-29 and 18.2-371 were improper because the predicate act for each charge— Section 18.2-361(A)—is unconstitutional both on its face and as applied."). He also raised a challenge specific to Section 18.2-371. *See id*. at 22, n.10.

The Commonwealth argues that even if Section 18.2-361(A) is unconstitutional after *Lawrence*, it is not so clearly unconstitutional as would support the issuance of the writ under 28 U.S.C. § 2254. But Section 18.2-361(A) is, if anything, more clearly unconstitutional than the statute struck down in *Lawrence*. Respondent further argues that this Court should sanction the Virginia courts' revision of Section 18.2-361(A), so that the statute could, perhaps, withstand constitutional analysis. But it is not the courts' place to re-write statutes. Indeed, the Virginia courts' gerrymandering of Section 18.2-361(A) to reach MacDonald in light of *Lawrence* resulted in a "revised" statute that runs afoul of the Constitution in numerous ways, none of which the Commonwealth disputes. The proper course is for Virginia's General Assembly to pass a new statute in light of *Lawrence* if it deems it appropriate to do so, but it has not. In a final effort to deny MacDonald's petition, the Commonwealth also argues that several of his constitutional arguments are procedurally defaulted. In each instance, however, the Commonwealth has failed to meet its burden to establish procedural default.

## I.    <u>MacDonald Satisfies The Section 2254 Standard</u>

Title 28 U.S.C. § 2254(d) provides that a writ of *habeas corpus* may not issue unless the state court's adjudication of the claim at issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

2

determined by the Supreme Court of the United States."  The state court decisions in this case plainly satisfy that standard.

*Lawrence* struck down a Texas statute that criminalized sodomy between people of the same sex.  *Lawrence* stated explicitly that the Texas statute before it was unconstitutional because it violated the liberty right recognized in the United States Constitution to engage in both heterosexual and homosexual sodomy.  As numerous courts have recognized, *Lawrence*'s holding applies with full force to statutes that give effect to moral disapproval of activity protected by the liberty right recognized in the Constitution.  *See, e.g.*, *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d. 1, 15 (1st Cir. 2012) (citing to *Lawrence* in support of the proposition that "moral disapproval alone cannot justify legislation" to invalidate the Defense of Marriage Act); *Perry v. Brown*, 671 F.3d 1052, 1092-94 (9th Cir. 2012) (relying in part on *Lawrence* to invalidate Proposition 8); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 744 (5th Cir. 2008) (holding a state statute criminalizing the sale and marketing of sexual devices unconstitutional as an impermissible burden on "due process right to engage in private intimate conduct of his or her choosing" announced in *Lawrence*); *Karouni v. Gonzales*, 399 F.3d 1163, 1173 (9th Cir. 2005) (stating that *Lawrence* establishes that the Fourteenth Amendment protects from impingement "intimate contact and enduring personal bond[s]"); *State v. Limon*, 122 P.3d 22, 38 (Kan. 2005) (relying on

3

*Lawrence* to hold unconstitutional state's statutory scheme mandating harsher penalties for same-sex sexual conduct than for the same conduct between members of the opposite sex); *Goodridge v. Dep't of Pub. Health*, 798 N.E.2d 941, 948 (Mass. 2003) ("[T]he Court [in *Lawrence*] affirmed that the core concept of common human dignity protected by the Fourteenth Amendment to the United States Constitution precludes government intrusion into the deeply personal realms of consensual adult expressions of intimacy and one's choice of an intimate partner."); *Martin v. Ziherl*, 607 S.E.2d 367, 371 (Va. 2005) (holding unconstitutional under *Lawrence* a Virginia statute criminalizing fornication between unmarried partners).

Section 18.2-361(A), like the statute invalidated in *Lawrence*, criminalizes sodomy. It therefore "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." The Commonwealth cites numerous cases for the proposition that the standard under Section 2254(d) is "onerous." *See* Opp. at 15 – 25 (citing authority). So it is, but a statute that is clearly invalid satisfies that burden. None of the authorities that the Commonwealth cites is apposite here, because those cases required a careful weighing of facts, circumstances, and intervening decisions.[2] By contrast, this case

---

[2]     *See, e.g., Harrington v. Richter*, 131 S. Ct. 770 (2011) (state court's application of *Strickland* to defense counsel's performance not unreasonable); *Greene v. Fisher*, 132 S. Ct. 38 (2011) (Supreme Court

4

involves solely an issue of law:  Whether the statute that serves as the predicate

offense to MacDonald's convictions (Section 18.2-361(A)) runs afoul of a

Supreme Court decision rendered prior to MacDonald's conviction.

The Commonwealth also argues that *Teague v. Lane*, 489 U.S. 288 (1989),

applies and that it mandates denial of the writ.  But *Teague* dealt with the question

of whether a new rule of procedural law would apply retroactively, and held that as

a "general rule, new constitutional rules of criminal procedure will not be

applicable to those cases which have become final before the new rules are

announced."  *Id.* at 310; *see also Horn v. Banks*, 536 U.S. 266, 271 (2002) ("In

*Teague*, we explained that 'unless they fall within an exception to the general rule,

new constitutional rules of criminal procedure will not be applicable to those cases

which have become final before the new rules are announced.'") (quoting *Teague*,

489 U.S. at 310) (*per curiam*).  There is no question of retroactivity in this case

because *Lawrence* was decided in 2003, before the judgment in this case and,

indeed, before the actions that gave rise to the case.  Furthermore, *Lawrence*

---

decision issued while state appeal was pending does not constitute clearly
established law for *habeas* purposes); *Cavazos v. Smith*, 132 S. Ct. 2 (2011)
(*per curiam*) (no unreasonable determination of fact by state court when
jury's verdict supported by the record); *Felkner v. Jackson*, 131 S.Ct. 1305
(2011) (*per curiam*) (state appellate court's rejection of *Batson* claim not
unreasonable); *Howes v. Fields*, 132 S. Ct. 1181 (2012) (appellate court
misinterpreting Supreme Court precedents); *Wetzel v. Lambert*, 132 S. Ct.
1195 (2012) (*per curiam*) (state court's rejection of alleged *Brady* violation
not unreasonable).  (All cases cited in Opp. at 15-22.)

5

involved a matter of substantive law, not procedural law, and was thus outside of *Teague*'s ambit.  *See Bousley v. United States*, 523 U.S. 614, 620 (1998) ("*Teague* by its terms applies only to procedural rules. . . .").

## II.    The State Courts Violated Clearly Established Federal Law In Refusing To Consider MacDonald's Facial Challenge To Section 18.2-361(A), Which Cannot Stand After *Lawrence*

### A.    Section 18.2-361(A) Is Facially Invalid Under *Lawrence*

*Lawrence* invalidated a Texas statute that criminalized same-sex sodomy under the Due Process Clause of the federal Constitution.  *See* Br. at 9-13; Brief of *Amici Curiae* (hereinafter, "*Amici* Br.") at 6-11.  In doing so, the Court explicitly overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986), which had rejected a facial challenge to a general sodomy statute that is substantively identical to Section 18.2-361(A).  As the Court in *Lawrence* held, "*Bowers* was not correct when it was decided, and it is not correct today," adopting Justice Stevens' dissent in *Bowers* as controlling.  *Lawrence*, 539 U.S. at 578 ("Justice Stevens' analysis, in our view, should have been controlling in *Bowers* and should control here.").  *Lawrence* thus made clear that the statute in *Bowers*, which is substantively identical to Section 18.2-361(A), was facially invalid.

The *Lawrence* Court's explicit rejection of the holding and rationale in *Bowers* and its express adoption of Justice Stevens' dissent in that case establish that *Lawrence* rendered all general sodomy statutes, including Section 18.2-

6

361(A), invalid.  The Commonwealth is thus wrong in asserting that "MacDonald has not cited a single case holding (or even implying) that *Lawrence* served to invalidate, without limitation, all sodomy statutes such as Virginia's."  Opp. at 31. *Lawrence* does just that.  Federal constitutional rights by definition cannot mean one thing in one State and something different in another State, and if enforcement of one State's statute is struck down as unconstitutional (as enforcement of Texas' sodomy statute was in *Lawrence*), then enforcement of another State's substantively identical statute would also be unconstitutional.  *See Martin v. Hunter's Lessee,* 14 U.S. 304, 347-49 (1816) (holding Constitution requires "*uniformity* of decisions throughout the whole United States, upon all subjects within [its] purview"); *American Trucking Assns., Inc. v. Smith*, 496 U.S. 167, 201 (1990) ("Either enforcement of the statute at issue in [a prior case] . . . was unconstitutional, or it was not; if it was, *then so is the enforcement of all identical statutes in other States*. . . .") (Scalia, J., concurring) (some emphases added).

The core holding of *Lawrence* was that sodomy-only statutes "further[ ] no legitimate state interest."  539 U.S. at 578.  The Commonwealth cannot explain why that holding does not control here.  Instead, the Commonwealth fastens on *dictum* from *Lawrence*, and asserts that *Lawrence* invalidated general sodomy laws only to the extent such statutes did not involve minors or non-consensual, public or commercial sexual activity.  *See* Opp. at 26-29.  But the Commonwealth's reliance

7

on *Lawrence*'s *dictum* is inappropriate here.  Section 2254(d) requires the Court to

consider whether the state courts' decisions violated "clearly established law,"

which means this Court must consider whether the state courts' decisions violated

the holdings, not the *dictum*, of Supreme Court decisions.  *See Howes v. Fields*,

132 S. Ct. 1181, 1187 (2012) (citing *Williams v. Taylor*, 529 U.S. 362, 412

(2000)).

Furthermore, the Commonwealth's argument is belied by what the *Lawrence*

Court actually did:  It invalidated broad sodomy statutes even though they, like

Virginia's law, theoretically prohibited sodomy involving minors and public and

commercial sodomy.  *See* Ga. Code Ann. § 16-6-2(a)(1) (1984); Br. at 10; *Amici*

Br. at 11-12.  If *Lawrence*'s holding were as limited as the Commonwealth asserts,

then the Court would have afforded a narrower remedy, and would have avoided

overruling *Bowers*.  *See* 539 U.S. at 579 (O'Connor, J., concurring in judgment,

but dissenting from the Court's overruling of *Bowers*).

To be sure, *Lawrence*'s *dictum* indicates that States are not prohibited from

enacting laws that seek to protect minors from sexual exploitation or that proscribe

public sex or prostitution.[3]  Virginia's General Assembly can, if it chooses, enact

---

[3]      The cases cited by the Commonwealth that allegedly have "recognized, and given effect to, the limited holding of *Lawrence*," Opp. at 32-35, are inapposite because they involve laws that specifically address either sexual conduct by an adult with a minor (such as child pornography), prostitution, or public sex.  Only one, *State v. Whiteley*, 616 S.E.2d 576 (N.C. App.

8

constitutionally appropriate laws regarding decency, prostitution and polygamy (for example).  But the *dictum* does not support the Virginia courts' refusal to invalidate Section 18.2-361(A), which has the same impermissible purpose as, and is substantively identical to, the statutes of Texas and Georgia that were struck down by *Lawrence*.

The Commonwealth argues that Section 18.2-361(A) has a "plainly legitimate sweep" that saves it from facial invalidation because "there are any number of circumstances under which Virginia's statute would be valid."  Opp. at 37.  As *Lawrence* made clear, however, the underlying purpose of Section 18.2-361(A) – the moral condemnation of all sodomy – is itself an impermissible reason for a statute.  The Commonwealth concedes that Section 18.2-361(A) is unconstitutional to the extent it criminalizes private, consensual, adult sodomy, which, as *amici* point out (*see Amici* Br. at 20-21), would constitute the vast majority of acts of sodomy committed in Virginia.  Statutes can avoid facial

---

2005), involved a court's upholding of a general sodomy statute post-*Lawrence* where consent was not given.  North Carolina's sodomy statute provides: "If any person shall commit the crime against nature, with mankind or beast, he shall be punished as a Class I felon."  N.C. Gen. Stat. § 14-177.  Significantly, and distinct from Virginia's law, what constitutes the elements of "the crime against nature" is defined exclusively by state common law.  *See State v. Stiller*, 590 S.E. 2d 305 (N.C. App. 2004).  Consequently, the courts of North Carolina, unlike the courts of Virginia, have the authority to modify the elements of that State's sodomy law.  *See infra* at Part III (discussing authority of courts to add elements to criminal statutes).

invalidation only when they operate unconstitutionally in "some very small percentage of cases." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006). That is plainly not the case here.

The Commonwealth further attempts to escape *Lawrence* by asserting that "MacDonald attempted to force himself upon a 17-year-old victim" and the conduct occurred in public. Opp. at 29. The trial court made no findings, however, with respect to consent or with respect to whether the conduct was in public, and the Virginia courts on direct and collateral review did not address those issues. *See* JA 113-25; 152-56; 254; 400-12.[4]

By ignoring the distinction between solicitation (which is the crime that MacDonald was convicted of) and sodomy, the Commonwealth ignores that the key question in this case is not whether Virginia could, consistent with *Lawrence*, prosecute an adult for engaging in sodomy with a 17-year old, but whether the Commonwealth could prosecute a 17-year old for engaging in sodomy with an adult. It could not. Minors capable of consent have the same constitutionally protected liberty to engage in consensual, private sexual conduct of their choosing

---

[4]     A.J's consent was irrelevant because MacDonald was charged with soliciting A.J. to commit a felony, and whether the person solicited consents to the solicitation is not an element of that crime. The Commonwealth's attempt to distinguish this case from *Lawrence* on the ground that "MacDonald's crime was complete upon his solicitation of the minor to commit the sodomy, irrespective of her response to that overture" (Opp. at 29-30) only underscores the irrelevance of A.J.'s consent.

as adults.  *See, e.g.*, *Carey v. Population Servs. Int'l*, 431 U.S. 678, 693 (1977); Br.

at 25-27; *see also infra* at Part III.[5]

### B. The Virginia Courts Unreasonably Applied, And Acted Contrary To, Established Federal Law In Declining To Consider MacDonald's Facial Challenge

The Virginia courts acted contrary to established federal law when they

refused to consider MacDonald's argument that Section 18.2-361(A) was

invalidated by *Lawrence*.  *See* Br. at 14-15; *United States v. Raines*, 362 U.S. 17,

23-24 (1960); *Barrows v. Jackson*, 346 U.S. 249, 257 (1953); *accord Bond v.*

*United States*, 131 S. Ct. 2355, 2367 (2011) (holding "[t]here is no basis in

precedent or principle to deny" a criminal defendant Article III or prudential

standing to facially challenge the statute that forms the basis of her conviction, in

case where criminal defendant argued statute violated concepts of state

sovereignty).  It is difficult to imagine a more suitable party to assert the facial

invalidity of a statute than a criminal defendant facing conviction under that law

when it has already been struck down by the Supreme Court.[6]

---

[5]    The Commonwealth says that this argument is "procedurally defaulted," but the argument is part of MacDonald's facial challenge to Section 18.2-361(A) and, therefore, is not subject to procedural default.

[6]    *See Bond*, 131 S. Ct. at 2367-68 (Ginsberg and Breyer, JJ., concurring) ("[A] court has no 'prudential' license to decline to consider whether the statute under which the defendant has been charged lacks constitutional application to her conduct.  And that is so even where the constitutional provision that would render the conviction void is directed at protecting a party not before

11

The Commonwealth responds by noting that the Virginia courts cited *County Court of Ulster County v. Allen*, 442 U.S. 140 (1979) in declining to entertain the challenge. *See* Opp. at 37-38. But *Ulster County* is inapplicable here. That case did not involve an instance where a criminal statute had already been invalidated, but one where a statute was invalidated based on "improbable" scenarios that the lower court "hypothesized." *Id*. at 156. The Commonwealth has cited no case where, as here, a criminal defendant was denied the ability to challenge a statute that was clearly invalid in light of United States Supreme Court precedent.

The Commonwealth argues further that the Virginia courts' application of a prudential standing rule to bar MacDonald's facial constitutional challenge immunizes those courts' decisions from collateral review because the application of a prudential rule necessarily involves discretion, and thus cannot involve a violation of clearly established federal law. *See* Opp. at 31. In support, the

---

the Court. Our decisions concerning criminal laws infected with discrimination are illustrative. The Court must entertain the objection—and reverse the conviction—even if the right . . . resides in someone other than the defendant." (citing *Eisenstadt* v. *Baird*, 405 U.S. 438, 452-455 (1972); *Craig* v. *Boren*, 429 U.S. 190, 192, 210 (1976); *Grayned* v. *City of Rockford*, 408 U.S. 104, 107, n. 2 (1972); *Welsh* v. *United States*, 398 U.S. 333, 361-362 (1970) (Harlan, J., concurring in result)).

Commonwealth cites two cases from the Sixth Circuit,[7] but neither is apposite for both cases held that a *habeas* petitioner cannot challenge a trial court's abuse of discretion when there is *otherwise* no constitutional violation. Here, as demonstrated above and in the opening brief, there is a constitutional violation.

In any event, notwithstanding the Virginia courts' purported holdings on prudential standing, those courts plainly reached the merits of MacDonald's facial challenge to Section 18.2-361(A). *See, e.g.*, *Bond*, 131 S. Ct. at 2362 (disregarding purported ruling on prudential standing as a determination on the merits, noting both are "closely connected"). The courts' holding that Section 18.2-361(A) could be applied to MacDonald because his case "involved minors" establishes that they necessarily rejected the argument that *Lawrence* invalidated Section 18.2-361(A) *in toto*. *See* JA 153-54; JA 406-07.

## III.    The Application Of Section 18.2-361(A) To MacDonald Was Contrary To Clearly Established Federal Law

The Commonwealth argues that because *Lawrence* allowed States to criminalize sexual relations between an adult and a minor, non-consensual sexual activity, and sexual activity in a public place, MacDonald's conviction is not contrary to *Lawrence*. The Commonwealth effectively asks the Court to re-write

---

[7]    *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001); *Sinistaj v. Burt*, 66 F.3d 804, 805-808 (6th Cir. 1995).

13

Section 18.2-361(A) so that it would comply with permissible boundaries after *Lawrence*.

This Court has cautioned that "we must be careful not to encroach upon the domain of a state legislature by 'rewrit[ing] a law to conform it to constitutional requirements.'" *Legend Night Club v. Miller*, 637 F.3d 291, 301 (4th Cir. 2011) (quoting *PSINet v. Chapman*, 362 F.3d 227, 236 (4th Cir. 2004) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884-85 (1997))). The job of writing legislation is for the legislative, not the judicial, branch, and the separation of functions between the two branches is especially important where, as here, a federal court is being asked to re-write a state statute. "[F]ederal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent. *Boos v. Barry*, 485 U.S. 312, 330 (1988) (citing *Grayned v. Rockford*, 408 U. S. 104, 110 (1972) and *Gooding v. Wilson*, 405 U. S. 518, 520-521 (1972)); *see also Legend Night Club*, 637 F.3d at 300.[8]

---

[8]    The Commonwealth cites *Allstate Ins. Co. v. Serio*, 261 F.3d 143(2d Cir. 2001) and *INS v. St. Cyr*, 533 U.S. 289 (2001), for the proposition that a court should interpret a statute to avoid constitutional infirmities where it is possible to do so. *See* Opp. at 43. The proposition is true as a general matter, but neither case involved the situation here in which a criminal statute that is unconstitutional on its face is given an "interpretation" that finds no support in either Supreme Court precedent or the legislative history or the text of the statute.

The construction proposed by Respondent is neither "reasonable" nor "readily apparent:"

(i)     **The proposed construction is inconsistent with Va. Code Ann. § 18.2-370(A)** – Virginia already has a statute that makes it a crime to solicit sodomy from a minor – but the age of minority is 15, not 17. *See* Va. Code Ann. § 18.2-370(A) (making it a crime for any person over the age of 18 "with lascivious intent, knowingly and intentionally" to propose that any person under the age of 15 "the performance of . . . and act constituting an offense under § 18.2-361(A)"); *see also* Br. at 18-19. Section 18.2-370(A) reflects the judgment of the Commonwealth about the appropriate age cut-offs and divisions at which to draw criminal penalties for solicitation of sodomy. The Commonwealth's proposed revision of Section 18.2-361(A) is inconsistent with what the Virginia General Assembly has already done.

(ii)    **The proposed construction is inconsistent with Va. Code Ann. § 16.1-228** – The courts' revision of Section 18.2-361(A) would also mean that A.J.'s act of delinquency, to which MacDonald was convicted of contributing, would be engaging in sodomy while being under the age of 18. But Virginia law specifically provides that the predicate underlying the crime of contributing to the delinquency of a minor cannot be an act that

15

would not be wrongful if performed by an adult.  *See* Va. Code Ann.

§§ 18.2-371, 16.1-228;  *see also* Br. at 22 n.10.

**(iii)**    **The proposed construction would criminalize the act of the 17-year**

**old** – MacDonald's solicitation count of conviction necessarily implies that

he solicited A.J. (the 17-year old) to commit a crime.  But when the

*Lawrence* Court referred to the possibility that States could criminalize sex

involving adults and minors it was plainly not contemplating the

permissibility of criminalizing the actions of a minor solicited by an adult to

have sex, but rather the permissibility of criminalizing the actions of the

adult.  *See* Br. at 19-20.

Because the proposed construction of Section 18.2-361(A) was neither reasonable

nor readily apparent, MacDonald did not have fair notice that his conduct would be

criminal and his conviction deprived him of due process of law.  *See Bouie v. City*

*of Columbia*, 378 U.S. 347, 354 (1964) (holding judicial construction of criminal

statute to convict defendant cannot be "unexpected and indefensible by reference

to the law which had been expressed prior to the conduct at issue"); *see also* Br. at

20-22.

Rather than address the merits of these arguments, the Commonwealth

argues that MacDonald's arguments "raise issues regarding the proper meaning of

various state statutes and the legislative intent underlying them," and that such

issues cannot be considered in a petition for *habeas corpus*. *See* Opp. at 39. The

issue on appeal is whether a state statute, Section 18.2-361(A), violates federal

constitutional standards. That issue is perfectly appropriate for *habeas*

consideration, and it is appropriate, indeed necessary, to analyze the state statute to

determine whether the writ should be granted. *See, e.g.*, *Rieck v. Cockrell*, 321

F.3d 487, 488 (5th Cir. 2003) (analyzing state statute to determine whether or not it

was punitive and therefore a violation of the Ex Post Facto Clause); *Poole v.*

*Wood*, 45 F.3d 246, 249 (8th Cir. 1995) (analyzing state statute to determine

whether or not it was unconstitutionally vague); *Amell v. Smith*, No. 5:10 CV 191,

2010 WL 5283295, at *9 (N.D. Ohio Nov. 23, 2010) (analyzing state multiple

punishment statute and legislative intent in order to determine whether petitioner's

conviction for two related offenses violated Double Jeopardy Clause); *United*

*States ex rel. Bocian v. Godinez*, No. 94 C 6147, 1995 WL 549020, at *3-8 (N.D.

Ill. Sep. 12, 1995) (analyzing legislative history of sentencing enhancement to

determine whether or not statute was unconstitutionally vague).

The Commonwealth also argues that the Virginia courts have already given

a narrowing construction to Section 18.2-361(A) in light of *Lawrence*. It points

out that in *McDonald v. Virginia*, 645 S.E.2d 918 (Va. 2007), which involved

MacDonald's activities in Prince George County, the Virginia Supreme Court

interpreted Section 18.2-361(A) to prohibit sodomy involving minors, which it

17

defined (in light of certain Virginia definitional statutes) as being less than 18 years old. *See* 645 S.E.2d at 924. The Commonwealth argues that this is a reasonable interpretation of Section 18.2-361(A), and therefore it is one that this Court is bound to accept. *See* Opp. at 40-42.[9]

The Commonwealth's proffered construction of Section 18.2-361(A) does not save MacDonald's convictions in this case. Even if Section 18.2-361(A) made it a criminal act for an adult to engage in sodomy with a person under the age of 17, MacDonald was not convicted of sodomy. He was convicted of soliciting A.J. to engage in a felony (to wit, sodomy), so the relevant question would be whether it was a felony for A.J., the 17-year old, to engage in sodomy with an adult. The Commonwealth's proffered interpretation does not address that question. As to MacDonald's conviction for contributing to the delinquency of a minor, the Commonwealth's proffered interpretation would run afoul of Section 16.1-228, which provides that "delinquent act" for purposes of Section 18.2-371 does not include actions that are lawful if committed by an adult. Engaging in private, consensual acts of sodomy is lawful for an adult.

---

[9]    Respondent also relies on *United States v. Bach*, 400 F.3d 622 (8th Cir. 2005), for the proposition that even after *Lawrence* the state or federal government may criminalize sexual activity involving minors. *See* Opp. at 41. Indeed they may, but only if the statute expressly provides that the activity it is criminalizing involves minors. The statutes at issue in *Bach* – 18 U.S.C. §§ 2251, 2252 and 2252A – did precisely that.

The Commonwealth's proposed construction also finds no support in the language of Section 18.2-361, or in any legislative history of that statute. It is nothing but a gerrymandered reading of the statute, the only purpose or sense of which is to avoid constitutional infirmity. It is not an interpretation so much as a statutory re-invention. Furthermore, because it involves a criminal statute, the proposed interpretation violates the precept that the legislature, not the judiciary, determines the elements of all crimes. *See, e.g.*, *County of Amherst v. Brockman*, 297 S.E.2d 805, 808 (1982) (in determining the elements of a penal statute "[w]e may not add . . . language which the legislature has chosen not to include"); *Johnson v. Commonwealth*, 561 S.E.2d 1, 3 (Va. App. 2002) (same, citing authority). If the Commonwealth's proposed interpretation were to be accepted, then a factfinder would have to make several factual findings beyond a reasonable doubt – whether there was consent, whether the act took place in public, whether the act involved a minor – that were never contemplated by the Virginia legislature.

MacDonald also demonstrated in his opening brief that the Virginia courts' attempt to rewrite Section 18.2-361(A) to avoid invalidity under *Lawrence* rendered it unconstitutional in new ways. For example:

**(i)     The proposed construction would violate adults' rights under the Equal Protection Clause** by irrationally penalizing an adult's engagement in, or

19

solicitation of, sodomy with a minor far more harshly than it would penalize an adult's engagement in, or solicitation of, sexual intercourse with a minor. *See* Br. at 22-24; *see also Amici* Br. at 23-29.

**(ii)** **The proposed construction would violate consenting minors' substantive due process rights to engage in sodomy with other consenting minors.** *See* Br. at 25-27; *see also supra* at Part II.A.

**(iii)** **The proposed construction would violate the equal protection rights of same-sex couples between 15 and 18 years of age** by criminalizing sodomy but not sexual intercourse among people in that age group. *See* Br. at 27-28.

The Commonwealth does not dispute any of these points on the merits, but in each instance argues that it was procedurally defaulted. *See* Opp. at 57-58. As set forth below, the Commonwealth is incorrect in its assertions of procedural default, *see infra* Point IV.B; *see also supra* n.5. The Commonwealth's refusal to respond substantively to these points underscores that the Virginia courts acted unreasonably in revising Section 18.2-361(A) to convict MacDonald.

Finally, the Commonwealth argues that this Court's denial of a certificate of appealability in MacDonald's Prince George case, its denial of his petition for rehearing, and the Supreme Court's denial of *certiorari* review (both in the Prince George case) should be given precedential effect here. *See* Opp. at 43-44. This

20

argument is baseless. The Court's denial of the certificate of appealability was done in an unpublished decision that states "[u]npublished opinions are not binding precedent in this circuit." The denial of the petition for rehearing was entered by the clerk and also unpublished. *See* L.R. 36(b). Denial of *certiorari* by the United States Supreme Court is also entitled to no precedential weight. *See, e.g.*, *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 919 (1950).

**IV.    The Commonwealth Has Failed To Establish That MacDonald's "*Ex Post Facto*" And Equal Protection Claims Are Procedurally Barred**

In a *habeas* proceeding, the assertion of a procedural default constitutes an affirmative defense that the Commonwealth bears the burden of establishing. *See Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)). As this Court has observed, "[t]he *habeas* respondent (here, the Commonwealth) bears the burden 'not only of asserting that a default occurred, but also of persuading the court that the factual and legal prerequisites of a default . . . are present.'" *Id.* (citation omitted and quoting 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2a, at 1265 n.5 (5th ed. 2005)). The Commonwealth has fallen far short of meeting its burden of establishing the legal or factual bases for any procedural default.

21

**A.** **The Commonwealth Has Failed To Meet Its Burden To Establish That MacDonald's "*Ex Post Facto*" Claim Was Procedurally Defaulted**

As stated in MacDonald's opening brief, the Virginia Supreme Court improperly defaulted MacDonald's *ex post facto* claim on procedural grounds under *Slayton v. Parrigan*, 215 Va. 27 (1974), because MacDonald clearly argued both to the trial court and on direct appeal that "it would be a violation of the ex post facto guarantee of the U.S. Constitution to assume an age requirement on a statute, where none now exists, and then convict the defendant on activity alleged to have occurred prior to the modification of the statute."  Br. at 28; *see also* JA 026 (motion to dismiss in trial court); JA 146, 150 (brief in support of petition for appeal to Court of Appeals); JA 176 (petition for appeal to Virginia Supreme Court); JA 201 (brief in support of petition for rehearing to Virginia Supreme Court) and Sup-JA 020 (opening brief to Virginia Court of Appeal).[10]

In response the Commonwealth argues that MacDonald's argument was defaulted because it was not included in the "Question Presented" sections of his briefs.  *See* Opp. at 47-51.  The Commonwealth raised the same point in *Jones v. Sussex I State Prison, supra,* and it was squarely rejected by this Court.  In *Jones*, the Commonwealth sought to bar a *habeas* petitioner's double-jeopardy claim on

---

[10]     MacDonald, who was proceeding *pro se*, improperly referred to this as an *ex post facto* challenge; in fact it is arises under the Due Process Clause.

the procedural ground that he had not included "double jeopardy language specifically in his assignments of error on direct appeal," citing the same state procedural rule it relies upon this case. *Jones*, 591 F.3d at 714. This Court held, however, that it would disregard "a Virginia defendant's failure to identify a claim in his assignment of error," when "the claim [is] fairly presented by the argument section of his brief." *Id*. (citing *Kasi v. Angelone*, 300 F.3d 487, 508-09 (4th Cir. 2002)).[11]

Moreover, as in *Jones*, the Commonwealth has cited no authority to establish that *Slayton* requires a *habeas* petitioner to assert his claim in his assignment of errors on direct appeal. Because the Commonwealth bears the burden of establishing procedural default, its failure to cite any authority barring a claim not raised in an assignment of error under *Slayton* is fatal. *Jones*, 591 F.3d at 716

---

[11] The Commonwealth attempts to bolster its argument by asserting that MacDonald's *ex post facto* argument amounted to nothing more than "scattered" references. Opp. at 53. The record belies this characterization. Moreover, in *Jones*, this Court found that a federal claim for double jeopardy was fairly presented to Virginia courts on appeal when the petitioner merely cited to a state-law case that involved federal double jeopardy issues, but otherwise failed to use "double jeopardy language." 591 F.3d at 711, 713-14. MacDonald's explicit and repeated assertion of a claim that "it would be a violation of the ex post facto guarantee of the U.S. Constitution to assume an age requirement on a statute, where none now exists, and then convict the defendant on activity alleged to have occurred prior to the modification of the statute," *see* J.A. at 026, 146, 150, 176, 201, amply meets the standard articulated in *Jones* and distinguishes this case from *Gray v. Netherland*, 99 F.3d 158 (4th Cir. 1996), where the petitioner never raised the disputed claim explicitly.

(holding Commonwealth failed to show procedural rule was adequate as applied

where no cases are cited demonstrating Virginia courts apply *Slayton* to bar claim

on collateral review because it was "not specifically mentioned as a ground for

reversal on direct appeal").

The Commonwealth's assertion that MacDonald's *ex post facto* claim is

procedurally barred because he "never complained in the Supreme Court of

Virginia that the Court of Appeals had wrongly failed to reach some ex post facto

contention," Opp. at 53, is also squarely rebutted by the record.  In his Petition for

Appeal to the Virginia Supreme Court, MacDonald asserted that the Court of

Appeals erred in finding that he did not have standing to mount a constitutional

challenge to Section 18.2-361(A).  JA 160.  In the section of his petition presenting

the argument to support this error, MacDonald argued that "[a]pplication of the

[sic] Virginia's Sodomy statute to Mr. Mac[D]onald would, therefore, be

unconstitutional as applied to him . . . and would be a violation of the *ex post facto*

prohibition contained in the US Constitution."  JA 176.  This same argument was

repeated in his petition for rehearing to that court.  JA 201.  Moreover, in his initial

*habeas* petition to the Virginia Supreme Court, MacDonald explicitly listed among

"the grounds which make your detention unlawful" that his "Conviction is in

violation of the ex post facto guarantee of the U.S. Constitution."  JA 213; *see also*

JA 236-39.  This same argument was reiterated as "Ground One" in his petition for

writ of *habeas corpus* to the district court as well.  JA 292.

> **B.    The Commonwealth Also Has Failed To Meet Its Burden Of Establishing Procedural Default Of MacDonald's Equal Protection Claim**

In his opening brief MacDonald established that the district court erred in

holding his equal protection claim procedurally barred (1) under the Virginia law

prohibiting successive *habeas* petitions, because he had raised the argument in his

initial petition for writ of *habeas corpus* to the Virginia Supreme Court (Br. at 29

& n.13 (citing JA 233-36); and (2) under *Slayton* because the Virginia Supreme

Court never rejected—much less considered—MacDonald's equal protection claim

on independent procedural grounds.  *Id*. at 29.

The Commonwealth does not respond to either argument.  *See* Opp. at 54-

57.  Instead, it asserts that MacDonald's equal protection argument should have

been procedurally barred because he did not raise it at trial or on direct appeal.  *Id*.

at 55-56.  Although MacDonald concedes this is the case, it is also true that the

Commonwealth never objected—until its opposition brief in this appeal—to

MacDonald's assertion of an equal protection argument under the procedural rule

set forth by *Slayton*.  Because an assertion of procedural default is an affirmative

defense, it can be waived and the Commonwealth has waived its ability to assert

procedural default at this late date.  *See, e.g.*, *Trest v. Cain*, 522 U.S. 87, 89 (1997)

("[P]rocedural default is normally a defense that the state is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter" (quotations omitted)); *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996); *Jenkins v. Anderson*, 447 U.S. 231, 234 n. 1, (1980) (declining to consider the state's procedural default argument because it was not raised below); *see also* the following oppositions to MacDonald's *habeas* petitions failing to argue equal protection argument was procedurally defaulted: JA 247-51 (motion to dismiss habeas petition in Virginia Supreme Court); JA 256-66 (supplemental motion to dismiss); JA 334-45 (Rule 5 Answer, motion to dismiss and supporting papers); JA 360-78 (supplemental brief in support of prior).

The Commonwealth attempts to explain away its failure – and the failure of the Virginia Supreme Court – to address MacDonald's equal protection claim by asserting that "MacDonald did not include any equal protection claim in his 'grounds' for state habeas relief . . . ." Opp. at 56-57. This is false. Indeed, the very page cited by the Commonwealth to prove MacDonald's omission states the following "ground" for state *habeas* relief: "d. Ineffective Assistance of Counsel for . . . failing to object to the Sentencing Court's denying of MacDonald's Rights of Equal Protection under the Law Resulting in Cruel and Unusual Punishment against the 8th Amendment." JA 213. Thus, there is no basis upon which to excuse the Commonwealth's failure to assert a procedural default defense or the

Virginia Supreme Court's failure to find one with respect to MacDonald's equal protection claim. Consequently, the Commonwealth has waived the defense here and the district court could not avoid the claim on the merits as a result of *Harris v. Reed*, 489 U.S. 255, 263 (1989), because the Virginia Supreme Court never found the claim procedurally defaulted, either "clearly and expressly" or otherwise. *Id*.

## <u>CONCLUSION</u>

For the foregoing reasons, and those discussed in MacDonald's opening brief, the district court's grant of the Commonwealth's motion to dismiss and denial of MacDonald's petition for writ of habeas corpus should be reversed and the writ should be granted.

Respectfully submitted,

DATED: July 16, 2012

/s/ Joshua D. N. Hess                    .
Benjamin E. Rosenberg
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

Joshua D. N. Hess
DECHERT LLP
One Maritime Plaza, Suite 2300
San Francisco, CA 94111
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

*Attorneys for Petitioner-Appellant*

27

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

I, Joshua D. N. Hess, counsel for the Appellant, certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,530 words, excluding parts of the brief exempted by Rule 32(a)(7)(B)(iii).

I further certify that this brief complies with Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman.

*/s/    Joshua D. N. Hess*
Joshua D. N. Hess

*Attorney for Petitioner-Appellant*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on July 16, 2012 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

DATED:  July 16, 2012                    /s/     *Joshua D. N. Hess*
                                                  Joshua D. N. Hess


                                                  *Attorney for Petitioner-Appellant*

29